# In the United States Court of Federal Claims

No. 09-315L

(E-Filed:  February 7, 2011)

|  |  |  |
|---|---|---|
| WHISPELL FOREIGN CARS, INC., ET AL., | ) ) ) | Fifth Amendment Rails-to-Trails Takings Claim; Partial Summary Judgment for Defendant; Interpretation of Deeds to Railroad; Deeds Conveyed Title in Fee Simple to Railroad |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) ) |  |

Mark F. Hearne, II, Clayton, MO, for plaintiffs.  Lindsay S.C. Brinton and Meghan S. Largent, Washington, DC, of counsel.

Carol Draper, with whom was Ignacia S. Moreno, Assistant Attorney General, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

HEWITT, Chief Judge

## I.    Introduction

This is a rails-to-trails case brought by Whispell Foreign Cars, Inc., et al. (plaintiffs).  Before the court are plaintiffs' Motion for Partial Summary Judgment, Docket Number (Dkt. No.) 29, filed June 16, 2010; plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment (Pls.' Mem.), Dkt. No. 31, filed June 16, 2010; plaintiffs' Proposed Findings of Uncontroverted Fact (PFUF I), Dkt. No. 30, filed June 16, 2010; the government's (defendant's) Responses and Objections to Plaintiffs' Proposed Findings of Uncontroverted Fact (Def.'s Resp. to PFUF I), Dkt. No. 40, filed July 28,

2010; defendant's Cross-Motion for Summary Judgment, Opposition to Plaintiffs' Motion for Partial Summary Judgment, and Memorandum in Support Thereof (Def.'s Resp.), Dkt. No. 38, filed July 28, 2010; defendant's Proposed Findings of Uncontroverted Fact in Support of its Cross-Motion for Summary Judgment (DFUF), Dkt. No. 39, filed July 28, 2010; plaintiffs' Responses to Defendant's Proposed Findings of Uncontroverted Fact in Support of its Cross-Motion for Summary Judgment (Pls.' Resp. to DFUF), Dkt. No. 49, filed October 22, 2010; plaintiffs' Proposed Findings of Uncontroverted Fact in Response to Defendant's Cross-Motion for Summary Judgment (PFUF II), Dkt. No. 50, filed October 22, 2010; plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment (Pls.' Resp.), Dkt. No. 48, filed October 22, 2010; defendant's Reply in Support of Cross-Motion for Partial Summary Judgment, and Opposition to Plaintiffs' Motion for Partial Summary Judgment (Def.'s Reply), Dkt. No. 56, filed November 23, 2010; defendant's Objections and Response to Plaintiffs' Proposed Findings of Uncontroverted Fact in Response to Defendant's Cross-Motion for Summary Judgment (Def.'s Resp. to PFUF II), Dkt. No. 57, filed November 23, 2010; and plaintiffs' Sur-Reply in Support of their Motion for Partial Summary Judgment and in Response to the Government's Reply in Support of its Cross-Motion for Partial Summary Judgment (Pls.' Sur-Reply), Dkt. No. 62, filed December 15, 2010.[1]

Plaintiffs claim that the government effected a taking of their property when it converted a railroad right of way to a trail pursuant to the National Trails System Act Amendments of 1983 (the Amendments), Pub. L. No. 98-11, 97 Stat. 48, to the National Trails System Act (the Trails Act), Pub. L. No. 90-543, 82 Stat. 919 (1968) (codified as amended at 16 U.S.C. § 1241 (2006)).  Plaintiffs request the court to enter partial summary judgment holding that the government has taken their property in violation of the Fifth Amendment and is therefore obligated to pay plaintiffs just compensation.  Pls.' Mem. 2.

Defendant cross-moves for summary judgment contending that the government did not effect a taking when it converted a railroad right of way to a trail pursuant to the Amendments to the Trails Act because plaintiffs' predecessors-in-interest conveyed fee simple estates to Tampa & Gulf Coast Railroad Co. (individually and/or collectively with its successors, as the context requires, Tampa & Gulf Coast).  Def.'s Resp. 2-3.  The court finds that the government did not effect a taking of the following plaintiffs' properties and accordingly denies the following plaintiffs' claims because such plaintiffs' predecessors-in-interest conveyed fee simple estates to Tampa & Gulf Coast:  (1) Bama Sea Products, Inc.'s claim relating to the Hayward Conveyance; (2) Peter Denne Property Holdings, Inc.'s claim relating to the Hayward Conveyance; (3) Joel M. and Jared M. Samon's claim

---

[1]Material facts relied on in this Opinion and cited to the filings of only one of the parties do not appear to be in dispute.

relating to the Hayward Conveyance; (4) Billie James and Laura E. Donald's claim relating to the Hayward Conveyance; (5) SBJ Resch Family Partnership Ltd.'s claim relating to the Hayward Conveyance; (6) Johnston Properties, LLC's claim relating to the Gilbart Conveyance; (7) Johnston Properties, LLC's claim relating to the Ainsworth Conveyance; (8) Whispell Foreign Cars, Inc.'s claim relating to the Ainsworth Conveyance; (9) Labar Enterprises, Inc. and Larry J. Ritzenthaler's claims relating to the Ainsworth Conveyance; (10) Ronald Hendriex's claim relating to the Pancoast Conveyance; (11) Connie and James Howard Batton's claim relating to the Pancoast Conveyance; (12) Whispell Foreign Cars, Inc.'s claim relating to the Pancoast Conveyance; and (13) Vito C. Farese's claim relating to the Pancoast Conveyance. The court therefore GRANTS-IN-PART and DENIES-IN-PART defendant's Cross-Motion for Summary Judgment and DENIES-IN-PART plaintiffs' Motion for Summary Judgment.[2]

---

[2]The evidence before the court is insufficient to permit the court to decide several matters addressed in plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment (Pls.' Mem.), Docket Number (Dkt. No.) 31 and defendant's Cross-Motion for Summary Judgment, Opposition to Plaintiffs' Motion for Partial Summary Judgment, and Memorandum in Support Thereof (Def.'s Resp.), Dkt. No. 38. In particular, several plaintiffs allege that the section of the railroad right of way adjacent to Jess and Virginia T. Abrams's property was acquired "'by possession' and without the benefit of a written conveyance." Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment (Pls.' Resp.), Dkt. No. 48, at 3. In response, defendants allege, "Contrary to Plaintiffs' contention, as the maps Defendant has submitted clearly show, the Abrams property is adjacent to [a] segment of the railroad acquired by an unknown conveyance. The conveyance is unknown, not because it does not exist, but because there is a missing entry on the valuation schedule." Defendant's Reply in Support of Cross-Motion for Partial Summary Judgment, and Opposition to Plaintiffs' Motion for Partial Summary Judgment (Def.'s Reply), Dkt. No. 56, at 18 (citations omitted). The court finds that there is a genuine issue of material fact regarding the takings claim of Jess and Virginia T. Abrams because the evidence does not permit the court to determine whether Tampa & Gulf Coast Railroad Co. (Tampa & Gulf Coast) held title to the property adjacent to the property of Jess and Virginia T. Abrams. The court defers consideration of Lawrence C. Alton's takings claim to Ordinance 429, Vito C. Farese's takings claim relating to the Dann Gerow conveyance and Johnston Properties, LLC's takings claim relating to the Johnstone conveyance until plaintiffs provide legible copies of Ordinance 429, the Dann Gerow conveyance and the Johnstone conveyance, and defendant has an opportunity to respond to Ordinance 429, the Dann Gerow conveyance and the Johnstone conveyance, in accordance with the court's Orders of November 19, 2010, Dkt. Nos. 51 and 53, and November 30, 2010, Dkt. No. 60. To the extent plaintiffs allege a taking of their property adjacent to the public recreational trail that plaintiffs wish the court to consider, see plaintiffs' Second Amended Complaint, Dkt. No. 13-1, at ¶ 98; see also Pls.' Mem. 15-16, plaintiffs shall file a memorandum of points and authorities (plaintiffs' Memorandum) in support of their contention that defendant effected a taking by erecting a public access trail adjacent to plaintiffs' property that resulted in flooding and a

II.     Background

    A.     The Trails Act

    Congress enacted the Amendments to address the national problem of shrinking rail tracks. Preseault v. Interstate Commerce Comm'n (Preseault I), 494 U.S. 1, 5 (1990).  The Amendments authorize the Interstate Commerce Commission (Commission or ICC)[3] to preserve railroad rights-of-way not currently in use for rail service for possible future use by converting those unused rights-of-way to recreational trails. Id. at 5-6; 16 U.S.C. § 1241.

    In order for a railroad right of way to be converted to a recreational trail, the railroad must first initiate abandonment proceedings with the Surface Transportation Board (STB) under 49 U.S.C. § 10903 or seek an exemption under 49 U.S.C. § 10502. Caldwell v. United States (Caldwell I), 57 Fed. Cl. 193, 195 (2003), aff'd, 391 F.3d 1226 (Fed. Cir. 2004).  If authority to abandon is granted, and the railroad carries out the abandonment, the STB's jurisdiction over the railroad right of way generally terminates. Hayfield N. R.R. Co. v. Chicago & N. W. Transp. Co., 467 U.S. 622, 633-34 (1984).  A party interested in acquiring or using the railroad right of way may request a certificate of interim trail use (CITU) or a notice of interim trail use (NITU) from the STB.[4]  49 C.F.R. § 1152.29(a), (c)-(d) (2010).

    If a request for an NITU is received and the railroad indicates that it is willing to negotiate a Trails Act Agreement, the STB issues an NITU.  Caldwell I, 57 Fed. Cl. at 195 (citing Goos v. Interstate Commerce Comm'n, 911 F.2d 1283, 1295 (8th Cir. 1990)); 49 C.F.R. § 1152.29(d)(1).  An NITU preserves the STB's jurisdiction.  Caldwell v. United

_____

significant increase in crime, theft and vandalism on or before Friday, March 4, 2011.  Defendant shall respond on or before Friday, April 1, 2011.  Plaintiff shall reply on or before Friday, April 15, 2011.  Plaintiffs' Memorandum shall not include arguments related to their claims that the court has dismissed in this Order and Opinion.

    [3]The Transportation Act of 1920, 41 Stat. 477-478, gave the Interstate Commerce Commission (ICC) jurisdiction over railroad abandonments.  RLTD Ry. Corp. v. Surface Transp. Bd., 166 F.3d 808, 810 (6th Cir. 1999).  "Pursuant to the ICC Termination Act of 1995, 109 Stat. 803, the ICC ceased to exist.  Authority over abandonment applications is now held by the [Surface Transportation Board]."  Id.; 49 U.S.C. § 10903 (2006).

    [4]Certificates of interim trail use (CITUs) are issued in regulated abandonment proceedings.  49 C.F.R. § 1152.29(c) (2010).  Notices of interim trail use (NITUs) are issued in exemption proceedings.  49 C.F.R. § 1152.29(d).

States (Caldwell II), 391 F.3d 1226, 1229-30 (Fed. Cir. 2004).  The NITU affords the railroad and the authorized trail group 180 days to negotiate a railbanking and interim Trails Act Agreement.  Caldwell I, 57 Fed. Cl. at 195; 49 C.F.R. § 1152.29(d)(1).  If the parties do not reach a railbanking and interim Trails Act agreement within 180 days, the NITU authorizes the railroad to abandon the line.  Caldwell I, 57 Fed. Cl. at 195 (citing Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd., 158 F.3d 135, 139 (D.C. Cir. 1998)).  "If an agreement is reached, the NITU automatically authorizes the interim trail use.  If the [STB] takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service."  Id. (internal citations omitted); 49 C.F.R. § 1152.29(d)(2).

B.    The Four Conveyances

Through a number of conveyances during the early 1900s, Tampa & Gulf Coast acquired a right of way on land approximately two miles in length in St. Petersburg, Florida to construct and operate a railroad.  DFUF ¶¶ 1-2; Pls.' Resp. to DFUF ¶ 2.  This opinion addresses four of those conveyances affecting the thirteen claims identified in the third paragraph of Part I of this opinion (collectively, the Four Conveyances).

On November 23, 1914 Janet M. Hayward and H.E. Hayward executed an instrument (Hayward Conveyance) that conveyed to Tampa & Gulf Coast "A strip of land Thirty (30) feet on either side of the center line of said railroad, as located and being constructed" for the consideration of one dollar and for the benefits to be derived from the construction and operation of the railroad.  Def.'s Resp. Defendant's Exhibit (DX) C (Hayward Conveyance); PFUF I, Plaintiffs' Exhibit (PX) 1-B (Hayward Conveyance); PFUF I ¶¶ 7-9, 11-13; Def.'s Resp. to PFUF I ¶¶ 7-9, 11-13.

On November 23, 1914 Harold W. Gilbart and Emma Gilbart executed an instrument (Gilbart Conveyance) that conveyed to Tampa & Gulf Coast "A strip of land Thirty (30) feet on either side of the center line of said railroad as located and being constructed" for the consideration of one dollar and for the benefits to be derived from the construction and operation of the railroad.  Def.'s Resp. DX D (Gilbart Conveyance); PFUF I PX 1-C (Gilbart Conveyance); PFUF I ¶¶ 14-17; Def.'s Resp. to PFUF I ¶¶ 14-17.

On March 15, 1915 H.M. Pancoast and Sarah Pancoast executed an instrument (Pancoast Conveyance) that conveyed to Tampa & Gulf Coast "a strip of land . . . thirty (30) feet on each side of a center line described as follows . . ." in consideration "of the sum of one dollar and other consideration . . . ."  Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-D (Pancoast Conveyance); PFUF I ¶¶ 20-22; Def.'s Resp. to

5

PFUF I ¶¶ 20-22.

On May 7, 1917 Wilfred Ainsworth et ux executed an instrument (Ainsworth Conveyance) that conveyed to Tampa & Gulf Coast "A strip of land Thirty (30) feet on either side of the center line of said railroad, as located and constructed" for the consideration of one dollar and for the benefits to be derived from the construction and operation of the railroad.  Def.'s Resp. DX E (Ainsworth Conveyance); PFUF I PX 1-E (Ainsworth Conveyance); PFUF I ¶¶ 23-26; Def.'s Resp. to PFUF I ¶¶ 23-26.

C.      The NITU

In March 2004 Tampa & Gulf Coast's successor, CSX Transportation, Inc. (CSX), filed a petition to abandon the railroad.  Def.'s Resp. DX A (STB NITU); PFUF I PX 1-QQ (STB NITU).  In their briefing, plaintiffs state that "[i]n May 2004 Pinellas County informed STB, '[W]e are documenting our interest in establishing a trail use for that property, as an extension of the Pinellas Trail . . . .  If we are successful through the abandonment procedure and obtain this property, the Pinellas Trail will link the downtown area of St. Petersburg to the rest of the county by way of this multipurpose trail.'"  Pls.' Mem. 14.[5]  CSX agreed to negotiate with Pinellas County, and the STB issued an NITU for the Railroad.  PFUF I PX 1-DDD (Letter Re Abandonment Exemption); PFUF I PX 1-QQ (STB NITU); Def.'s Resp. DX A (STB NITU).  In December 2005 CSX and The Trust for Public Land (TPL) reached an agreement pursuant to the NITU, and CSX executed a quitclaim deed to TPL.  PFUF I PX 1-A (CSX & TPL Deed); Def.'s Resp. DX B (CSX & TPL Deed).  The right of way was subsequently conveyed by TPL to the State of Florida.  See Def.'s Resp. DX I (Counteroffer & Purchase Agreement).  In 2007 Pinellas County constructed a public recreational trail on the right of way where Tampa & Gulf Coast once operated a railroad.  See PFUF I PX 1-BBB (Trail Extension Plans for Project No. 06103-612); PFUF I PX 1-FFF (Photographs from Pinellas County documenting construction of the Pinellas Trail); PFUF I PX 1-GGG (Trail Extension Plans for Project No. 06103-112).

III.    Legal Standards

A.      Subject Matter Jurisdiction

Because subject matter jurisdiction is a threshold matter, it must be established

---

[5]Plaintiffs cite to plaintiffs' Proposed Findings of Uncontroverted Fact Plaintiffs' Exhibit (PX) 1-PP in support of the quoted material.  The court has been unable to locate the quoted material in PFUF I PX 1-PP.

before the case can proceed on the merits.  Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir.
2007).  Plaintiffs bear the burden of establishing subject matter jurisdiction, and the court
may determine whether they have met this burden once they have had an opportunity to be
heard on the matter.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.
Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)).  If the court
determines that it lacks subject matter jurisdiction, it must dismiss the claim.  Steel Co.,
523 U.S. at 94; Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); Rules of the
United States Court of Federal Claims (RCFC) 12(h)(3).

Like all federal courts, the United States Court of Federal Claims (CFC) is a court
of limited jurisdiction.  The jurisdiction of the CFC is set forth in the Tucker Act, 28
U.S.C. § 1491.  The Tucker Act provides that the CFC has jurisdiction to hear claims
against the United States founded upon "the Constitution, or any Act of Congress or any
regulation of an executive department . . . or for liquidated or unliquidated damages in
cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  However, the Tucker Act "does not
create any substantive right enforceable against the United States for money damages."
United States v. Testan, 424 U.S. 392, 398 (1976).  In order to establish subject matter
jurisdiction in the CFC, a plaintiff must point to a relevant money-mandating statute,
regulation or Constitutional provision.  See id.

In a takings case, the money-mandating provision is the Fifth Amendment to the
Constitution.  Schooner Harbor Ventures, Inc. v. United States, 569 F.3d 1359, 1362 (Fed.
Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005).  The Fifth
Amendment reads, in relevant part, "[N]or shall private property be taken for public use,
without just compensation."  U.S. Const. amend. V.

B.      Summary Judgment Standard of Review

The parties have cross-moved for summary judgment pursuant to RCFC 56.  Pls.'
Mem. 2; Def.'s Resp. 1.  A motion for summary judgment may be granted only when
"there is no genuine issue as to any material fact and . . . the movant is entitled to judgment
as a matter of law."  RCFC 56(c)(1).  A fact is material if it might significantly affect the
outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where
the moving party has not disputed any facts contained in the non-movant's pleadings, the
court assumes all well-pleaded facts to be true and draws all applicable presumptions and
inferences therefrom in favor of the non-moving party.  See Univ. of W. Va., Bd. of Trs. v.
VanVoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002); Banks v. United States, 69 Fed. Cl.
206, 209 (2006).

Failure by a non-moving party to raise a genuine issue of material fact results in the court's granting summary judgment in favor of the moving party.  See RCFC 56(c)(1).  "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient."  SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis omitted).

When parties cross-move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

C.      The Trails Act and the Fifth Amendment Takings Clause

The Trails Act is subject to the Fifth Amendment Takings Clause.  Preseault I, 494 U.S. at 12-16.  When the government takes private property pursuant to the Trails Act, the government must provide just compensation.  See id.  However, only those individuals "with a valid property interest at the time of the taking are entitled to compensation." Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) (citations omitted); Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . .").  If a railroad owns in fee simple the land underlying and immediately surrounding a railroad right of way at the time of the alleged taking, another party cannot be owed just compensation for the taking of that land.

In a rails-to-trails takings case, a "taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use."  Caldwell II, 391 F.3d at 1228.  "The issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way."  Id. at 1233-34; see also Ladd v. United States, No. 2010-5010, 2010 WL 5230890 *3-4 (Fed. Cir. Dec. 14, 2010).

The United States Court of Appeals for the Federal Circuit explained that a rails-to-trails takings claim presents three primary questions:

(1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States (Preseault II), 100 F.3d 1525, 1533 (Fed. Cir. 1996).  This opinion addresses question one (1).

D.      The Property Interests Created by the Four Conveyances Under Florida Law

Whether an individual has a compensable private property interest is determined by state law.  See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .").

Florida law directs the court to "consider the language of the entire instrument in order to discover the intent of the grantor, both as to the character of [the] estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent."  Reid v. Barry, 112 So. 846, 852 (Fla. 1927); see also Thrasher v. Arida, 858 So. 2d 1173, 1175 (Fla. Dist. Ct. App. 2003).  "With respect to deeds of conveyance, the general rule is that if there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language."  Mason v. Roser, 588 So. 2d 622, 624 (Fla. Dist. Ct. App. 1991) (citing Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. Dist. Ct. App. 1975)).  "If the provisions are ambiguous, extrinsic evidence may be examined to determine the intent of the parties at the time the document establishing the easement was created."  Am. Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 465 (Fla. Dist. Ct. App. 2005) (citing Kotick v. Durrant, 196 So. 802, 804 (Fla. 1940)).

E.      Railroad Conveyances Under Florida Law

The parties dispute whether the Four Conveyances created interests in fee or easements.  The issue of whether a deed conveying land to a railroad conveys a fee simple or a mere easement has not, as far as this court can discern, been the subject of a dispositive analysis by the Florida Supreme Court.  It would be desirable to certify this question to the Florida Supreme Court, see Arizonans for Official English v. Arizona, 520

9

U.S. 43, 77 (1997), but that is not possible.[6]  Therefore, "it is the duty of this court to approximate the law of the state from decisions of its highest court as best it can."  Estate of German v. United States, 7 Cl. Ct. 641, 646 (1985).

In Atlantic Coast Line R. Co. v. Duval County (Atlantic Coast), 154 So. 331 (Fla. 1934), the Supreme Court of Florida held that the extension of a street across a railroad right of way constituted a taking of the railroad's private property for public use in violation of Section 29, Article 16, of the Constitution of the State of Florida.  The court also stated, "A railroad right of way [in Florida] is not a mere easement or user for railroad purposes.  Like other property it is acquired by purchase or condemnation and vests a fee in the company acquiring it which cannot be divested except as the law provides."  Atlantic Coast, 154 So. at 332.  The quoted statements were unnecessary to the holding in Atlantic Coast because whether the railroad in Atlantic Coast held fee simple title to the right of way was not at issue.

Relying on Atlantic Coast, the treatise Florida Jurisprudence states, "Consistent with the nature of a railroad company and its property, a railroad right of way is private property dedicated to a public use.  Ordinarily, it is not a mere easement or user for railroad purposes, but a fee vested in the company."  43 Fla. Jur. 2d § 32 (citing Atlantic Coast,154 So. at 331).  Also relying on Atlantic Coast, the Florida District Court of Appeal in Florida Power Corp. v. McNeely (McNeely), 125 So. 2d 311 (Fla. Dist. Ct. App. 1960) stated, as a general rule, that a railroad right of way is held in fee:  "Ordinarily, a railroad right of way in Florida is not a mere easement or user for railroad purposes but is a fee vested in the railroad."  McNeely, 125 So. 2d at 316 (citing Atlantic Coast, 154 So. at 331).  The McNeely Court then observed that operation of a railroad did not necessarily require that the right of way be held in fee simple:  "This is not to say that a railroad by arrangement or otherwise could not under any circumstances operate by virtue of an easement . . . ."  Id.  However, both observations by the McNeely Court appear to have been unnecessary to the holding in that case.  McNeely was a case involving a power line easement where the defendant, relying on a case involving a railroad right of way, argued that the champerty rule applies to power line easements.  The McNeely Court discussed Atlantic Coast in an effort to distinguish the authority cited by the defendant.

---

[6]Rule 9.150 of the Florida Rules of Appellate Procedure grants jurisdiction to the Florida Supreme Court to answer questions of law certified to it by a United States Court of Appeals or the Supreme Court of the United States "if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida."  Fla. R. App. P. 9.150(a). It does not, however, grant jurisdiction to the Florida Supreme Court to answer questions of law certified to it by the United States Court of Federal Claims.  See id.

The court has found no other decisions by Florida courts addressing the issue.  In the absence of additional authority, the court follows the statements made by the Supreme Court of Florida in <u>Atlantic Coast</u> and repeated in the treatise, Florida Jurisprudence.

Plaintiffs cite to a number of cases interpreting the law of other states to support their contention that under Florida law a conveyance of a right of way to a railroad grants the railroad an easement.  Pls.' Mem. 22-26, 28-29; Pls.' Resp. 16-18; Pls.' Sur-Reply 7-9.  Because those decisions interpret the laws of other states, they do not determine the property at issue.[7]

Plaintiffs also cite to <u>Preseault v. Interstate Commerce Commission</u> (<u>Preseault I</u>), 494 U.S. 1 (1990) and <u>Preseault v. United States</u> (<u>Preseault II</u>), 100 F.3d 1525 (Fed. Cir. 1996), Pls.' Mem. <u>passim</u>; Pls.' Resp. 17-18 n.28, as support for their contention in briefing that "[a]s a general matter of Florida law, a conveyance of a 'right-of-way' to a railroad grants the railroad only an easement to use the land and does not convey title to the fee estate in the land itself."  Pls.' Mem. 22.  In <u>Preseault I</u> and <u>Preseault II</u>, the United States Supreme Court and the Federal Circuit, respectively, interpreted Vermont, not Florida, law.  <u>See</u> <u>Preseault I</u>, 494 U.S. at 920, 923-24; <u>Preseault II</u>, 100 F.3d at 1534-37.  <u>Preseault I</u> and <u>Preseault II</u> contain no authority that is in conflict with the statements made by the Florida Supreme Court in <u>Atlantic Coast</u>.  The Atlantic Coast court stated:

> A railroad right of way [in Florida] is not a mere easement or user for railroad purposes.  Like other property it is acquired by purchase or condemnation and vests a fee in the company acquiring it which cannot be

---

[7]Plaintiffs cite to <u>Florida Southern Ry. Co. v. Brown</u> (<u>Florida Southern</u>), 1 So. 512 (Fla. 1887), to support their contention that a conveyance of a right of way to a railroad under Florida law grants the railroad an easement.  Pls.' Sur-Reply 8.  In particular, plaintiffs contend that Florida has a "strip and gore presumption."  Pls.' Sur-Reply 8.  The court has not found any Florida decision holding that Florida has a strip and gore presumption.  The strip and gore presumption refers to a public policy rationale that disfavors "the conveyance of strips of land by [fee] simple titles to railroad companies for right-of-way purposes, either by deed or condemnation."  <u>Ross, Inc. v. Legler</u>, 199 N.E.2d 346, 348 (Ind. 1964).  <u>Florida Southern</u> did not hold that Florida has a strip and gore presumption.  In <u>Florida Southern</u>, the court held, "[W]here a person owning a lot on a public street of a town or city, and the fee in the soil as far as the center of the street, the laying of a railroad track along said street, wholly or partly on his soil, without his consent, and without taking it, and paying just compensation therefor, in accordance with the statute regulating the method by which private property may be taken for public use, is an unlawful appropriation of the property of such owner, and . . . he is entitled to damage therefor."  <u>Florida Southern</u>, 1 So. at 514 (emphasis omitted).  The court simply does not see how the <u>Florida Southern</u> decision could be read to establish a "strip and gore presumption."

divested except as the law provides.

Atlantic Coast, 154 So. at 332.

Plaintiffs suggest in briefing that Van Ness v. Royal Phosphate Co. (Van Ness I), 53 So. 381 (Fla. 1910) supports their contention that a conveyance of a right of way to a railroad under Florida law grants the railroad an easement. Pls.' Mem. 24. Van Ness I did not hold, as plaintiffs contend, that in Florida a railroad right of way is "only an easement." Pls.' Mem. 24. Van Ness I addressed whether conveying land subject to an easement breached a warranty of title. See Van Ness I, 53 So. at 381. The court in Van Ness I quoted an Iowa decision on the issue of whether conveying land subject to an easement breached a warranty of title. See id. at 382-83. The Iowa court, during its discussion of Iowa law, stated that "'a right of way for a railroad is only an easement.'" Id. (quoting Brown v. Young, 29 N.W. 941, 941 (Iowa 1886)). Iowa law does not govern this case.

Plaintiffs also point to dicta in two cases, Davis v. MCI Telecommunications Corp., 606 So. 2d 734 (Fla. Dist. Ct. App. 1992) and Dean v. MOD Properties, Ltd., 528 So. 2d 432 (Fla. Dist. Ct. App. 1988), to support their contention that a conveyance of a right of way to a railroad grants the railroad an easement. Pls.' Mem. 22, 27; Pls.' Resp. 16; Pls.' Sur-Reply 8-9.

In Davis, the court reviewed an appeal of a judgment that dismissed plaintiffs' complaint against a telephone company for unlawful entry and unlawful detention of plaintiffs' property. Davis, 606 So. 2d at 734-35. Plaintiffs owned property encumbered by a railroad right of way. Id. at 735. Plaintiffs argued that the telephone company buried telecommunications cable along the easement located across plaintiffs' property without paying just compensation or obtaining permission. Id. Plaintiffs sought a determination that the telephone company acted illegally and an order that the telephone company must remove the telecommunications cable. Id. The court held that the Telegraph Act, Fla. Stat. § 362.02 (1989), authorized the telephone company to place buried cable along the railroad right of way without paying just compensation or obtaining permission from plaintiffs. Id. at 737. The court also stated that the Telegraph Act did not apply only to railroad rights of way held in fee simple title: "The telegraph act would have been entirely futile if it depended on the assumption that all Florida railroads had obtained their rights-of-way years before in fee simple title. Except to site a station house or similar land use here and there, the railroads had no need or desire for any interest except 'right-of-way.'" Id. at 738. The fact that the Davis court opined that a railroad could, in practice, operate over an easement does not determine whether the conveyances in this case create an estate in fee. That determination must be made based on the language of the conveyances

themselves.

In <u>Dean</u>, appellee MOD Properties was the owner of a strip of land when it executed to the City of Sanford a right of way easement for a road.  <u>Dean</u>, 528 So. 2d at 432-33.  The easement contained a reversion clause that provided that the interest in the property would revert to MOD and its successors if the road right of way were abandoned. <u>Id.</u>  MOD subsequently conveyed the strip of land to Donald J. Bales "less and except the following described easement."  <u>Id.</u> at 432-433.  The land described in the easement given to the City of Sanford was then specifically described in the deed.  <u>Id.</u>  The City of Sanford never used the right of way easement for a road and eventually formally expressed its intention to abandon it.  <u>Id.</u>  MOD sued Donald J. Bales's successor-in-interest for possession of the land described in the right of way easement, arguing that MOD had reserved to itself that portion of the strip of land that was abandoned by the City of Sanford.  <u>Id.</u> at 433.  The court held that MOD did not reserve "any right of reversion as to the fee simple title" but merely excluded the recorded easement in favor of the City of Sanford from the title interest conveyed to Donald J. Bales.  <u>Id.</u> at 434.  The case did not mention railroad rights of way.  <u>See id.</u>  The <u>Dean</u> court also observed that "only an easement is needed to lawfully construct and maintain a road right-of-way on and over land."  <u>Id.</u> at 434.  The property interest needed to support a road is not at issue in this case.

The discussions in <u>Davis</u> and <u>Dean</u> cited by plaintiffs do not aid the court in its task, which is interpreting the language of the conveyances in this case.  Neither case interpreted a railroad conveyance:  <u>Dean</u> dealt with a "road right-of-way easement" and <u>Davis</u> interpreted the Telegraph Act, Fla. Stat. § 362.02.  <u>See Dean</u>, 528 So. 2d at 434; <u>Davis</u>, 606 So. 2d at 737-38.[8]

IV.    Discussion

      A.    Did the Railroad Acquire Easements or Estates in Fee?

---

[8]Plaintiffs also argue that the law of eminent domain causes a railroad's property interest to be characterized as an easement.  Pls.' Mem. 28-30; Pls.' Resp. 16.  Even if the proposition were correct (and plaintiffs' briefing does not persuade the court of plaintiffs' contention), it is irrelevant.  The properties at issue in this case were acquired by deeds, for consideration, from private parties.  This is not a condemnation case.  In their discussion of eminent domain, Pls.' Mem. 28-30, plaintiffs again refer to <u>Preseault v. United States</u> (<u>Preseault II</u>), 100 F.3d 1525 (Fed. Cir. 1996); however, in <u>Preseault II</u>, the United States Court of Appeals for the Federal Circuit (Federal Circuit) applied Vermont law.  <u>See Preseault II</u>, 100 F.3d at 1534-37.

As the Federal Circuit has stated, see supra Part III.D, the first question a rails-to-trails takings claim presents is, "[W]ho owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates[?]"  Preseault II, 100 F.3d at 1533.

Plaintiffs contend that Tampa & Gulf Coast acquired easements to use plaintiffs' land for the operation of a rail line.  Pls.' Mem. passim.  Defendant contends that Tampa & Gulf Coast acquired a fee simple interest in the railroad right of way and, in particular, in the Four Conveyances.  Def.'s Resp. 1.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56(c)(1).  The interpretation of a deed is a question of law for the court.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 997 (Fed. Cir. 1995) ("The interpretation of a contract or a deed, like a patent, is ultimately a question of law."); Yaist v. United States, 17 Cl. Ct. 246, 253 (1989) ("[T]he interpretation of a written instrument is a question of law, which is to be determined by the court."); Nourachi v. United States, 632 F. Supp. 2d 1101, 1110 (M.D. Fla. 2009) (Under Florida law, "The interpretation of a deed, including the legal description of the boundaries set forth in the deed, is a question of law for the Court to resolve.").  The pertinent facts--that is, the texts of the Hayward, Gilbart, Ainsworth and Pancoast Conveyances--are not in dispute.

1.    The Hayward Conveyance

The Hayward Conveyance provides:

. . . the parties of the first part for and in consideration of One Dollar ($1.00) and other valuable considerations . . . and the further consideration of the benefits to be derived from the construction and operation of the Tampa and Gulf Coast Railroad, have granted, conveyed, bargained and sold, and so hereby grant, convey, bargain and sell, to the party of the second part, its successors and assigns forever, the following described land, to-wit:

A strip of land Thirty (30) feet on either side of the center line of said railroad, as located and being constructed, and being a part of the following described property, situate in St. Petersburg, of the County of Pinellas and State of Florida.

The part conveyed is more strictly described as follows, to-wit:  A sixty (60) foot right of way, being thirty (30) feet on each side of the following

14

> described located center line of the Tampa and Gulf Coast Railroad
> . . . .  The said line above described being the center line of the track of said
> Tampa and Gulf Coast Railroad, as now constructed and operated over and
> across <u>said lands of grantors</u> . . . .
>
> <u>And the said parties of the first part hereby do/fully warrant the title to said</u>
> <u>land</u> and that the same is free from all encumbrances, and will defend the
> same against the lawful claims of all persons whomsoever . . . .

Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward Conveyance) (emphasis added).

At issue in the interpretation of the Hayward Conveyance is the intent of the grantor.  <u>See Reid</u>, 112 So. at 863.  To determine the grantor's intent, the court is to:

> consider the language of the entire instrument in order to discover the intent
> of the grantor, both as to the character of [the] estate and the property
> attempted to be conveyed, and to so construe the instrument as, if possible,
> to effectuate such intent.

<u>Id.</u>  The parties have not offered any extrinsic evidence of intent.  <u>See</u> <u>Am. Quick Sign,</u> <u>Inc. v. Reinhardt</u>, 899 So. 2d 461, 465 (Fla. Dist. Ct. App. 2005) ("If the provisions are ambiguous, extrinsic evidence may be examined to determine the intent of the parties at the time the document establishing the easement was created.").

The focus of the parties' dispute is "the character of the estate" conveyed, in particular, whether the Hayward Conveyance is of an estate in fee simple or an easement. In aid of their positions, the parties dispute the import of all the elements of the deed:  the recitation of consideration, the granting clause, the description of the property conveyed and the warranty of title.  The court considers each in turn.

The Hayward Conveyance recites that the conveyance is "in consideration of One Dollar ($1.00) . . . and the further consideration of the benefits to be derived from the construction and operation of the Tampa and Gulf Coast Railroad."  Def.'s Resp. DX C (Hayward Conveyance); PFUF I PX 1-B (Hayward Conveyance).  Plaintiffs argue that the Hayward Conveyance was executed for nominal consideration and, without citation to relevant Florida authority, argue that payment of nominal consideration indicates that the grantor intended to convey an easement rather than fee simple title.  Pls.' Mem. 27; Pls.' Resp. 12-13.  However, under Florida law, a conveyance may not be challenged based on the recited consideration.  <u>Venice E., Inc. v. Manno</u>, 186 So. 2d 71, 75 (Fla. Dist. Ct. App.

1966) ("It is fundamental that the law will not consider the adequacy or the sufficiency of the consideration given for a conveyance or transaction."); Rogers v. United States (Rogers II), 93 Fed. Cl. 607, 624 (2010) (quoting Venice E., 186 So. 2d at 75).  Moreover, one dollar and the further consideration of the benefits to be derived from the construction and operation of the railroad is not, as plaintiffs state, the only consideration given, Pls.' Mem. 27; Pls.' Resp. 12; the Hayward Conveyance recites that it is granted for the consideration of "[one dollar] and other valuable considerations" as follows:

> [T]he parties of the first part for and in consideration of One Dollar ($1.00) and other valuable considerations . . . and the further consideration of the benefits to be derived from the construction and operation of the Tampa and Gulf Coast Railroad, have granted, conveyed, bargained and sold, and so hereby grant, convey, bargain and sell, to the party of the second part, its successors and assigns forever, the following described land . . . .

Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward Conveyance) (emphasis added).

Defendant contends that the Hayward Conveyance granted Tampa & Gulf Coast an estate in fee simple.  Def.'s Reply 8-10.  Plaintiffs contend that "'[g]rant, bargain, sell and convey' do not mean fee title – as opposed to an easement – was conveyed."[9]  Pls.' Resp. 14.  The text of the granting clause supports defendant's contention that the Hayward Conveyance granted Tampa & Gulf Coast an estate in fee simple.  Importantly, the granting clause in the Hayward Conveyance grants, conveys, bargains and sells "the following described land."  See Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); see also PFUF I PX 1-B (Hayward Conveyance) (emphasis added).

The Hayward Conveyance does not contain any language--express or implied--limiting the use or purpose to which the land is to be put.  The Hayward Conveyance is therefore distinguishable from the conveyance addressed in Rogers v. United States (Rogers I), 90 Fed. Cl. 418, 429-30 (2009), where the conveyance "does not refer to the outright transfer of land; it refers to 'a right of way for railroad purposes over and across the . . . parcels of land,' thereby indicating that the grantor retained an interest in the land

---

[9]Plaintiffs also state that there is no history of the railroad "being treated as a separate and distinct parcel of land." Pls.' Resp. 13.  But Florida law does not require there to be such treatment in order for there to be a valid conveyance of a fee interest.  Rogers II did not hold, as plaintiffs suggest, Pls.' Resp. 13-14, that there must be a history of the railroad's being treated as a separate and distinct parcel of land, see Rogers v. United States (Rogers II), 93 Fed. Cl. 607, 618 (2010).

referenced in the conveyance and granted an easement to Seaboard."

The Hayward Conveyance does not contain an express condition that the land would again become the property of the grantor if it ceased to be used for railroad purposes, see Def.'s Resp. DX C (Hayward Conveyance); see also PFUF I PX 1-B (Hayward Conveyance), as deeds conveying easements often do, see Rogers I, 90 Fed. Cl. at 429-31 (finding that a conveyance that provided, among other things, that title would revert to the grantor upon discontinuance of the use of the parcel for railroad purposes vested the railroad with an easement for railroad purposes rather than an estate in fee).

The description of the property conveyed is in two paragraphs.  The first paragraph reads:

> A strip of land Thirty (30) feet on either side of the center line of said railroad, as located and being constructed, and being a part of the following described property, situate in St. Petersburg, of the County of Pinellas and State of Florida.

Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward Conveyance) (emphasis added).  Again, the property conveyed is described as land:  "[a] strip of land."  Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward Conveyance) (emphasis added).  Plaintiffs state, "The [Hayward Conveyance does not use] the phrase 'fee simple' or 'fee' to describe the interest conveyed."  Pls.' Resp. 11.  However, "stock words or phrases" are not necessary to create a particular property interest under Florida law.  Cf. Seaboard Air Line Ry. Co. v. Dorsey (Seaboard Air Line), 149 So. 759, 761 (Fla. 1932) (explaining that no "stock words or phrases" are required to create "a dedication, a donation, an easement, or a license" ).

The second paragraph of the property description, on which plaintiffs chiefly rely, refers to a right of way and refers to the locus with reference to a center line of track now constructed and operated over and "across said lands of grantor:"

> The part conveyed is more strictly described as follows, to-wit:  A sixty (60) foot right of way, being thirty (30) feet on each side of the following described located center line of the Tampa and Gulf Coast Railroad . . . .  The said line above described being the center line of the track of said Tampa and Gulf Coast Railroad, as now constructed and operated over and across said lands of grantors . . . .

Def.'s Resp. DX C (Hayward Conveyance); PFUF I PX 1-B (Hayward Conveyance).

Plaintiffs' briefing emphasizes the term "right of way" as indicating that the railroad obtained only an easement from the grantors. Pls.' Resp. 13. Defendant contends that "[a]lthough . . . the deed[] use[s] the phrase 'right of way,' it is in the context describing the property location, not the interest conveyed." Def.'s Reply 15. The court agrees with defendant's contention.

If the only reference to the property conveyed described it as a "right of way," and if the granting clause and warranty of title lacked clarity, the words "right of way" might lead to the conclusion that the Hayward Conveyance conveyed an easement. However, the text of the deed's descriptive paragraph includes the sentence that the center line of the grantee's track is "over and across <u>said lands</u> of grantors." Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward Conveyance) (emphasis added).[10]

The only prior reference to <u>land</u> in the Hayward Conveyance is in the granting clause, where the parties of the first part "hereby grant, convey, bargain and sell, to the party of the second part, its successors and assigns forever, <u>the following described land</u>, to-wit . . . ." Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward Conveyance) (emphasis added).

Moreover, the description containing the phrase "<u>said lands</u> of grantors" is immediately followed by a warranty of title "to <u>said lands</u>," referencing, clearly the <u>land</u> conveyed, which is also referenced to as the <u>lands of grantor</u> over which the railroad is "now constructed and operated:

And the said parties of the first part hereby do/fully warrant the title to <u>said</u>

---

[10]Plaintiffs rely on <u>Trailer Ranch, Inc. v. City of Pompano Beach</u>, 500 So. 2d 503 (Fla. 1986) for the proposition that "the words 'across, over, and under' in a conveyance [are] indicative of an easement rather than a fee simple absolute estate in land." Pls.' Mem. 27; Pls.' Sur-Reply 8-9. <u>Trailer Ranch</u> dealt primarily with evidence in a condemnation proceeding but briefly discussed the character of the estate acquired by the city though an order of taking. <u>Trailer Ranch</u>, 500 So. 2d at 505-06. The court concluded that the order of taking, containing the words "across, over and under," vested the city with a perpetual utility easement. <u>Id.</u> at 506. Because <u>Trailer Ranch</u> involved an order of taking rather than a voluntary conveyance and a utility rather than a railroad, the court does not find the case dispositive of the interpretation of the Hayward Conveyance. Moreover, because the phrase is located in the section describing the strip of land and because there is no language in the conveyance limiting use of the land, it appears to the court that the phrase "over and across said lands" merely describes the land conveyed. <u>See</u> Def.'s Resp. DX C (Hayward Conveyance); <u>see also</u> PFUF I PX 1-B (Hayward Conveyance).

land and that the same is free from all encumbrances, and will defend the
same against the lawful claims of all persons whomsoever . . . .

Def.'s Resp. DX C (Hayward Conveyance) (emphasis added); PFUF I PX 1-B (Hayward
Conveyance) (emphasis added).

Plaintiffs' briefing does not address or even acknowledge the warranty of title
included in the Hayward Conveyance.  The Hayward Conveyance provides, "And the said
parties of the first part hereby do/fully warrant the title to said land and that the same is
free from all encumbrances, and will defend the same against the lawful claims of all
persons whomsoever."  Def.'s Resp. DX C (Hayward Conveyance) (emphasis added);
PFUF I PX 1-B (Hayward Conveyance) (emphasis added).  Because the Hayward
Conveyance conveys land, warrants title to the land, and contains no limitations on the use
of the land, the court finds that Tampa & Gulf Coast received an estate in fee from Janet
M. Hayward and H.E. Hayward.[11]  Therefore, plaintiffs who are the successors-in-interest
of Janet M. Hayward and H.E. Hayward are not entitled to just compensation under the
Fifth Amendment.  See Wyatt, 271 F.3d at 1096 ("[O]nly persons with a valid property
interest at the time of the taking are entitled to compensation."); see also Cienega Gardens,
331 F.3d at 1328 ("For any Fifth Amendment takings claim, the complaining party must
show it owned a distinct property interest at the time it was allegedly taken . . . .").

2.      The Gilbart Conveyance

The Gilbart Conveyance provides:

. . . the parties of the first part for and in consideration for the sum of One
($1) Dollar and other valuable consideration . . . and the further
consideration of the benefits to be derived from the construction and
operation of the Tampa and Gulf Coast Railroad, have granted, conveyed,
bargained and sold and do hereby grant, convey, bargain and sell to the party
of the second part, its successors and assigns forever, the following
described land to wit:

A strip of land Thirty (30) feet on either side of the center line of said
railroad as located and being constructed, and being a part of the following

---

[11]Contrary to defendant's assertion, Def.'s Resp. 10 n.2, Billie James and Laura E.
Donald are plaintiffs in this case.  See plaintiffs' Motion for Leave to File Second Amended
Complaint (Plaintiffs' Motion for Leave), Dkt. No. 13; Order of December 14, 2009, Dkt. No. 14
(granting plaintiffs' Motion for Leave).

described property situate in St. Petersburg, of the County of Pinellas State of Florida.

The part conveyed is more strictly described as follows, to wit: A sixty foot right of way being thirty foot on each side of the following described located center line of the Tampa & Gulf Coast Railroad . . . .

Should the route of the center line of the said main track be changed from its present location this grant in the same words here employed shall apply and attach to such change of route just as fully and to the same effect as if such new route were herein particularly described . . . .

And the said parties of the first part do hereby fully warrant the title to said land, and that the same is free from all [e]ncumbrances, and will defend the same against the lawful claims of all persons whomsoever . . . .

Def.'s Resp. DX D (Gilbart Conveyance) (emphasis added); PFUF I PX 1-C (Gilbart Conveyance) (emphasis added).

The Gilbart Conveyance recites that the conveyance is "in consideration of One ($1) Dollar . . . and the further consideration of the benefits to be derived from the construction and operation of the Tampa and Gulf Coast Railroad." Def.'s Resp. DX D (Gilbart Conveyance); PFUF I PX 1-C (Gilbart Conveyance). Plaintiffs argue that the Gilbart Conveyance was executed for nominal consideration and, without citation to relevant Florida authority, argue that payment of nominal consideration indicates that the grantor intended to convey an easement rather than fee simple title. Pls.' Mem. 27; Pls.' Resp. 12-13. However, under Florida law, a conveyance may not be challenged based on the recited consideration. Venice E., 186 So. 2d at 75. Moreover, one dollar and the further consideration of the benefits to be derived from the construction and operation of the railroad is not, as plaintiffs state, the only consideration given, Pls.' Mem. 27; Pls.' Resp. 12; the Gilbart Conveyance also recites that it is granted "for and in consideration for the sum of One ($1) Dollar and other valuable consideration . . ." D's Resp. DX D (Gilbart Conveyance); PFUF I PX 1-C (Gilbart Conveyance).

The granting clause recites that:

the parties of the first part for and in consideration for the sum of One ($1) Dollar and other valuable consideration . . . and the further consideration of the benefits to be derived from the construction and operation of the Tampa and Gulf Coast Railroad, have granted, conveyed, bargained and sold and do

hereby grant, convey, bargain and sell to the party of the second part, its
successors and assigns forever, <u>the following described land</u> to wit:

Def.'s Resp. DX D (Gilbart Conveyance) (emphasis added); PFUF I PX 1-C (Gilbart
Conveyance) (emphasis added).

Defendant contends that the Gilbart Conveyance granted Tampa & Gulf Coast an
estate in fee simple.  Def.'s Reply 9-10.  Plaintiffs contend that "'Grant, bargain, sell and
convey' do not mean fee title – as opposed to an easement – was conveyed."  Pls.' Resp.
14.  The text of the granting clause supports defendant's contention that the Gilbart
Conveyance granted Tampa & Gulf Coast an estate in fee simple.  The granting clause in
the Gilbart Conveyance grants, conveys, bargains and sells "<u>the following described land</u>."
Def.'s Resp. DX D (Gilbart Conveyance) (emphasis added); PFUF I PX 1-C (Gilbart
Conveyance) (emphasis added).

The Gilbart Conveyance does not contain any language limiting the use or purpose
to which the land is to be put.  The Gilbart Conveyance, like the Hayward Conveyance, is
therefore distinguishable from the conveyance addressed in <u>Rogers I</u>, 90 Fed. Cl. at 429-
30, where the conveyance "does not refer to the outright transfer of land; it refers to 'a
right of way for railroad purposes over and across the . . . parcels of land,' thereby
indicating that the grantor retained an interest in the land referenced in the conveyance and
granted an easement to Seaboard."

And, like the Hayward Conveyance, the Gilbart Conveyance does not contain any
condition, express or implied, that the land would again become the property of the grantor
if it ceased to be used for railroad purposes, <u>see</u> Def.'s Resp. DX D (Gilbart Conveyance);
<u>see also</u> PFUF I PX 1-C (Gilbart Conveyance), as deeds conveying easements often do,
<u>see</u> <u>Rogers I</u>, 90 Fed. Cl. at 429-31 (finding that a conveyance that provided, among other
things, that title would revert to the grantor upon discontinuance of the use of the parcel
for railroad purposes vested the railroad with an easement for railroad purposes rather than
an estate in fee).

The description of the property conveyed is in two paragraphs.  The first paragraph
reads:

<u>A strip of land</u> Thirty (30) feet on either side of the center line of said
railroad as located and being constructed, and being a part of the following
described property situate in St. Petersburg, of the County of Pinellas State
of Florida.

Def.'s Resp. DX D (Gilbart Conveyance) (emphasis added); PFUF I PX 1-C (Gilbart Conveyance) (emphasis added).  Again, the property conveyed is described as <u>land</u>: "[a] <u>strip of land</u>."  Def.'s Resp. DX D (Gilbart Conveyance) (emphasis added); PFUF I PX 1-C (Gilbart Conveyance) (emphasis added).  Plaintiffs state, "The [Gilbart Conveyance does not use] the phrase 'fee simple' or 'fee' to describe the interest conveyed."  Pls.' Resp. 11.  However, "stock words or phrases" are not necessary to create a particular property interest under Florida law.  <u>Cf.</u> <u>Seaboard Air Line</u>, 149 So. at 761 (explaining that no "stock words or phrases" are required to create "a dedication, a donation, an easement, or a license" ).

The second paragraph of the property description, on which plaintiffs chiefly rely, refers to a right of way and refers to the locus with reference to the "located center line" of the Tampa & Gulf Coast Railroad:

> The part conveyed is more strictly described as follows, to wit:  A sixty foot right of way being thirty foot on each side of the following described located center line of the Tampa & Gulf Coast Railroad . . . .

Def.'s Resp. DX D (Gilbart Conveyance); PFUF I PX 1-C (Gilbart Conveyance).

Plaintiffs' briefing emphasizes the term 'right of way' as indicating that the railroad obtained only an easement from the grantors.  Pls.' Resp. 13.  Defendant contends that "Although . . . the deed[] use[s] the phrase "right of way," it is in the context describing the property location, not the interest conveyed."  Def.'s Reply 15.

If the only reference to the property conveyed described it as a "right of way," and if the granting clause (granting title to "the following described land") and warranty of title ("to said land") lacked clarity, the words "right of way" might lead to the conclusion that the Gilbart Conveyance conveyed an easement.  However, the grant of title to "<u>the following described land</u>" and the description of the "<u>strip of land</u>" are followed by a warranty of title "to <u>said land</u>," clearly referencing the <u>land</u> conveyed:

> <u>And the said parties of the first part do hereby fully warrant the title to said land</u>, and that the same is free from all incumbrances, and will defend the same against the lawful claims of all persons whomsoever . . . .

Def.'s Resp. DX D (Gilbart Conveyance) (emphasis added); PFUF I PX 1-C (Gilbart Conveyance) (emphasis added).  Plaintiffs' briefing does not address or even acknowledge the warranty of title included in the Gilbart Conveyance.

Because the Gilbart Conveyance conveys land, warrants title to such land and contains no limitations on the use of the land, the court finds that Tampa & Gulf Coast received an estate in fee from Harold W. Gilbart and Emma Gilbart.  Therefore, plaintiffs, who are the successors-in-interest of Harold W. Gilbart and Emma Gilbart, are not entitled to just compensation under the Fifth Amendment.  See Wyatt, 271 F.3d at 1096; see also Cienega Gardens, 331 F.3d at 1328 ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . .").[12]

     3.     The Ainsworth Conveyance[13]

The Ainsworth Conveyance provides:

. . . the said parties of the first part, for and in consideration of the sum of One Dollar ($1.00) and other valuable consideration . . . and the further consideration of the benefits to be derived from the construction and operation of the Tampa and Gulf Coast Railroad, have granted, conveyed bargained and sold and do hereby grant, convey bargain, and sell to the party of the second part, its successors and assigns forever, the following described land, to-wit:

A strip of land Thirty (30) feet on either side of the center line of said railroad, as located and constructed and being a part of the following described property situate in St. Petersburg, of the County of Pinellas State

_____

[12]The Gilbart Conveyance includes a provision that states, "Should the route of the center line of the said main track be changed from its present location this grant in the same words here employed shall apply and attach to such change of route just as fully and to the same effect as if such new route were herein particularly described."  Def.'s Resp. DX D (Gilbart Conveyance); PFUF I PX 1-C (Gilbart Conveyance).  Nothing in the papers filed in this case indicates that the provision has ever been relied on by Tampa & Gulf Coast, the grantee of the Gilbart Conveyance.  The provision was not addressed in the parties' briefing, and the court has been unable to locate any decision interpreting such a provision under Florida law.  The provision has no apparent bearing on the resolution of the issue before the court.

[13]Plaintiffs state that the word "thru" is used in each of the Four Conveyances.  Pls.' Mem. 27.  Only the Ainsworth Conveyance uses the word.  Compare Def.'s Resp. DX E (Ainsworth Conveyance); PFUF I PX 1-E (Ainsworth Conveyance) with Def.'s Resp. DX C (Hayward Conveyance); PFUF I PX 1-B (Hayward Conveyance); Def.'s Resp. DX D (Gilbart Conveyance); PFUF I PX 1-C (Gilbart Conveyance); Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-D (Pancoast Conveyance).

of Florida.  The part conveyed is more strictly described as follows, to-wit:

Description of the Right of Way thru the Ainsworth property, <u>a strip of land</u>
thirty foot on each side of the following described center line of the Tampa
& Gulf Coast Railroad . . . .

Should the route of the center line of the said main track be changed from its
present location this grant in the same words here employed shall apply and
attach to such change of route just as fully and to the same effect as if such
new route were herein particularly described . . . .

<u>And the said parties of the first part do hereby fully warrant the title to said</u>
<u>land</u> and that the same is free from all incumbrances and will defend
the same against the lawful claims of all parties whomsoever . . . .

Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E
(Ainsworth Conveyance) (emphasis added).

The Ainsworth Conveyance recites that the conveyance is "in consideration of the
sum of One Dollar ($1.00) . . . and the further consideration of the benefits to be derived
from the construction and operation of the Tampa and Gulf Coast Railroad."  Def.'s Resp.
DX E (Ainsworth Conveyance); PFUF I PX 1-E (Ainsworth Conveyance).  Plaintiffs
argue that the Ainsworth Conveyance was executed for nominal consideration and,
without citation to relevant Florida authority, argue that payment of nominal consideration
indicates that the grantor intended to convey an easement rather than fee simple title.  Pls.'
Mem. 27; Pls.' Resp. 12-13.  However, under Florida law, a conveyance may not be
challenged based on the recited consideration.  <u>Venice E.</u>, 186 So. 2d at 75.  Moreover,
one dollar and the further consideration of the benefits to be derived from the construction
and operation of the railroad is not, as plaintiffs state, the only consideration given Pls.'
Mem. 27; Pls.' Resp. 12; the Ainsworth Conveyance recites that it is granted "for and in
consideration of the sum of One Dollar ($1.00) and other valuable consideration . . . ."
Def.'s Resp. DX E (Ainsworth Conveyance); PFUF I PX 1-E (Ainsworth Conveyance).

The granting clause recites:

<u>the parties of the first part</u> for and in consideration of the sum of One Dollar
($1.00) and other valuable consideration . . . and the further consideration of
the benefits to be derived <u>from the construction and operation of the Tampa</u>
<u>and Gulf Coast Railroad, have granted, conveyed, bargained and sold, and so</u>
<u>hereby grant, convey, bargain and sell to the party of the second part, its</u>

successors and assigns forever, the following described land, to-wit:

Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E
(Ainsworth Conveyance) (emphasis added).

Defendant contends that the Ainsworth Conveyance granted Tampa & Gulf Coast
an estate in fee simple.  Def.'s Reply 9-10.  Plaintiffs contend that "'[g]rant, bargain, sell
and convey' do not mean fee title – as opposed to an easement – was conveyed."  Pls.'
Resp. 14.  The text of the granting clause supports defendant's contention that the
Ainsworth Conveyance granted Tampa & Gulf Coast an estate in fee simple.  The granting
clause in the Ainsworth Conveyance grants, conveys, bargains and sells "the following
described land."  Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I
PX 1-E (Ainsworth Conveyance) (emphasis added).

The Ainsworth Conveyance does not contain any language limiting the use or
purpose to which the land is to be put.  The Ainsworth Conveyance, like the Hayward and
Gilbart Conveyances, is therefore distinguishable from the conveyance addressed in
Rogers I, 90 Fed. Cl. at 429-30, where the conveyance "does not refer to the outright
transfer of land; it refers to 'a right of way for railroad purposes over and across
the . . . parcels of land,' thereby indicating that the grantor retained an interest in the land
referenced in the conveyance and granted an easement to Seaboard."

And, like the Hayward and Gilbart Conveyances, the Ainsworth Conveyance does
not contain any condition, express or implied, that the land would again become the
property of the grantor if it ceased to be used for railroad purposes, see Def.'s Resp. DX E
(Ainsworth Conveyance); see also PFUF I PX 1-E (Ainsworth Conveyance), as deeds
conveying easements often do, see Rogers I, 90 Fed. Cl. at 429-31 (finding that a
conveyance that provided, among other things, that title would revert to the grantor upon
discontinuance of the use of the parcel for railroad purposes vested the railroad with an
easement for railroad purposes rather than an estate in fee).

The description of the property conveyed is in two paragraphs.  The first paragraph
reads:

A strip of land Thirty (30) feet on either side of the center line of said
railroad, as located and constructed and being a part of the following
described property situate in St. Petersburg, of the County of Pinellas State
of Florida.

Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E

25

(Ainsworth Conveyance) (emphasis added).  Again, the property conveyed is described as land:  "[a] strip of land."  Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E (Ainsworth Conveyance) (emphasis added).  Plaintiffs state, "The [Ainsworth Conveyance does not use] the phrase 'fee simple' or 'fee' to describe the interest conveyed."  Pls.' Resp. 11.  However, "stock words or phrases" are not necessary to create a particular property interest under Florida law.  Cf. Seaboard Air Line, 149 So. at 761 (explaining that no "stock words or phrases" are required to create "a dedication, a donation, an easement, or a license" ).

The second paragraph of the property description, on which plaintiffs chiefly rely, refers to a right of way and refers to the locus with reference to a center line of the Tampa & Gulf Coast Railroad:

> The part conveyed is more strictly described as follows, to-wit:
>
> Description of the Right of Way thru the Ainsworth property, a strip of land thirty foot on each side of the following described center line of the Tampa & Gulf Coast Railroad . . . .

Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E (Ainsworth Conveyance) (emphasis added).

Plaintiffs' briefing emphasizes the term "right of way" as indicating that the railroad obtained only an easement from the grantors.  Pls.' Resp. 13.  Defendant contends that "[a]lthough . . . the deed[] use[s] the phrase 'right of way,' it is in the context describing the property location, not the interest conveyed."  Def.'s Reply 15.

If the only reference to the property conveyed described it as a "right of way," and if the granting clause and warranty of title lacked clarity, the words "right of way" might lead to the conclusion that the Ainsworth Conveyance conveyed an easement.  However, the granting clause ("the following described land") and the description "[a] strip of land" are followed by a warranty of title "to said land," referencing, clearly the land conveyed:

> And the said parties of the first part do hereby fully warrant the title to said land and that the same is free from all [e]ncumbrances and will defend the same against the lawful claims of all parties whomsoever . . . .

Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E (Ainsworth Conveyance) (emphasis added).  Plaintiffs' briefing does not address or even acknowledge the warranty of title included in the Ainsworth Conveyance.

26

In the section of the conveyance describing the "strip of land," the phrase "thru the Ainsworth property" is used.  Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E (Ainsworth Conveyance) (emphasis added).  The court reads the phrase as describing the location of the land rather than the interest conveyed.  The court finds that the intent of the parties is better evinced by the repeated references in the deed to a conveyance of "land" and the clause warranting title to "said land."  Cf. Rogers II, 93 Fed. Cl. at 621-22; see also Def.'s Resp. DX E (Ainsworth Conveyance) (emphasis added); PFUF I PX 1-E (Ainsworth Conveyance) (emphasis added).

Because the Ainsworth Conveyance conveys land, warrants title to such land and contains no limitations on the use of the land, the court finds that Tampa & Gulf Coast received an estate in fee from Wilfred Ainsworth et ux.  Accordingly plaintiffs who are the successors-in-interest of Wilfred Ainsworth et ux are not entitled to just compensation under the Fifth Amendment.  See Wyatt, 271 F.3d at 1096; see also Cienega Gardens, 331 F.3d at 1328 ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . .").[14]

4.    The Pancoast Conveyance

The Pancoast Conveyance provides:

. . . the said parties of the first part . . . have granted, bargained, and sold, conveyed and confirmed and . . . do grant, bargain, sell convey and confirm, unto the said party of the second part, and in its successors and assigns forever, all the following part and parcel . . . .

A strip of land extending at right angles thirty (30) feet on each side of a center line described as follows: . . . .

TOGETHER with all and singular, the covenants, hereditaments and appurtances . . . and every right, title or interest, legal or equitable of the said parties of the first part . . . .

TO HAVE AND TO HOLD the same unto the said party of the second part, and its successors and assigns . . . .

---

[14]The Ainsworth Conveyance, like the Gilbart Conveyance, includes a provision stating that the grant to the railroad shall apply to a change in route location.  See Def.'s Resp. DX E (Ainsworth Conveyance); see also PFUF I PX 1-E (Ainsworth Conveyance); see also supra note 12.

That the said parties of the first part, at the date hereof are lawfully <u>seized in fee simple of the above described premises</u> and have peaceable and undisputed possession of the same.

That <u>the said party of the second part, its successors and assigns, shall at all times here[after] have peaceable possession of said premises</u>, without . . . disturbance of the said parties of the first part . . . .

[T]he said parties of the first part . . . shall defend . . . against all and every person or persons lawfully claiming or to claims . . . <u>and will warrant and by these presents forever defend</u>.

Def.'s Resp. DX F (Pancoast Conveyance) (emphasis added); PFUF I PX 1-D (Pancoast Conveyance) (emphasis added).

The Pancoast Conveyance recites that the conveyance is in consideration of "one dollar and other valuable consideration." Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-D (Pancoast Conveyance). Plaintiffs argue that the Pancoast Conveyance was executed for nominal consideration and, without citation to relevant Florida authority, argue that payment of nominal consideration indicates that the grantor intended to convey an easement rather than fee simple title. Pls.' Mem. 27; Pls.' Resp. 12-13. However, under Florida law, a conveyance may not be challenged based on the recited consideration. <u>Venice E.</u>, 186 So. 2d at 75.

The granting clause recites:

the said parties of the first part . . . have granted, bargained, sold, conveyed and confirmed and . . . do grant, bargain, and sell convey and confirm, unto the said party of the second part, and in its successors and assigns forever, all the following part and parcel . . .

TOGETHER with <u>all and singular, the covenants, hereditaments and appurtances . . . and every right, title or interest, legal or equitable of the said parties of the first part</u> . . . .

Def.'s Resp. DX F (Pancoast Conveyance) (emphasis added); PFUF I PX 1-D (Pancoast Conveyance) (emphasis added).

Defendant contends that the Pancoast Conveyance granted Tampa & Gulf Coast an

28

estate in fee simple.  Def.'s Reply 9-10.  Plaintiffs contend that "'[g]rant, bargain, sell and convey' do not mean fee title – as opposed to an easement – was conveyed."  Pls.' Resp. 14.  The text of the granting clause supports defendant's contention that the Pancoast Conveyance granted Tampa & Gulf Coast an estate in fee simple.  The granting clause in the Pancoast Conveyance grants, conveys, bargains and sells "the following part and parcel."  Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-D (Pancoast Conveyance).  Moreover, like the conveyance in Rogers II, 93 Fed. Cl. at 619, that was held to pass fee simple title to the railroad, the Pancoast Conveyance conveys "every right, title or interest, legal or equitable" in the parcel conveyed.  Def.'s Resp. DX F (Pancoast Conveyance) (emphasis added); PFUF I PX 1-D (Pancoast Conveyance) (emphasis added).  The conveyance is therefore of all of the grantors' interest.  The Pancoast Conveyance recites that "the said parties of the first part, at the date hereof are lawfully seized in fee simple of the above described promises and have peaceable and undisputed possession of the same."  Def.'s Resp. DX F (Pancoast Conveyance) (emphasis added); PFUF I PX 1-D (Pancoast Conveyance) (emphasis added).  The text of the Pancoast Conveyance makes abundantly clear that the Pancoast grantors conveyed their entire interest, and that the grantors' interest is an interest in fee simple.

The Pancoast Conveyance does not contain any language limiting the use or purpose to which the land is to be put.  The Pancoast Conveyance, like the Hayward, Gilbart and Ainsworth Conveyances, is therefore distinguishable from the conveyance addressed in Rogers I, 90 Fed. Cl. at 429-30, where the conveyance "does not refer to the outright transfer of land; it refers to 'a right of way for railroad purposes over and across the . . . parcels of land,' thereby indicating that the grantor retained an interest in the land referenced in the conveyance and granted an easement to Seaboard."

And, like the Hayward, Gilbart and Ainsworth Conveyances, the Pancoast Conveyance does not contain any condition, express or implied, that the land would again become the property of the grantor if it ceased to be used for railroad purposes, Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-D (Pancoast Conveyance), as deeds conveying easements often do, see Rogers I, 90 Fed. Cl. at 429-31 (finding that a conveyance that provided, among other things, that title would revert to the grantors upon discontinuance of the use of the parcel for railroad purposes vested the railroad with an easement for railroad purposes rather than an estate in fee).

The description of the property reads:

A strip of land extending at right angles thirty (30) feet on each side of a center line described as follows: . . . .

29

Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-D (Pancoast Conveyance).
Again, the property conveyed is described as <u>land</u>: "[a] strip of land." Def.'s Resp. DX F
(Pancoast Conveyance) (emphasis added); PFUF I PX 1-D (Pancoast Conveyance)
(emphasis added).

The Pancoast Conveyance provides that the grantors will warrant and forever
defend the grantees' title in the land: "parties of the first part . . . shall defend . . . against
all and every person or persons lawfully claiming or to claims . . . will warrant and by
these presents forever defend." Def.'s Resp. DX F (Pancoast Conveyance); PFUF I PX 1-
D (Pancoast Conveyance). Plaintiffs' briefing does not address or even acknowledge
either the statement that the grantors' interest is in fee simple or the warranty of title
included in the Pancoast Conveyance.

Because the grantors are lawfully "<u>seized in fee simple of the above described</u>
<u>premises</u>" and because the Pancoast Conveyance describes the property conveyed as "[a]
<u>strip of land</u>" and conveys "<u>every right, title or interest</u>" of the grantors, which the
grantors agree to "<u>warrant and . . . forever defend</u>," Def.'s Resp. DX F (Pancoast
Conveyance) (emphasis added); PFUF I PX 1-D (Pancoast Conveyance) (emphasis
added), the court finds that Tampa & Gulf Coast received an estate in fee from H.M.
Pancoast and Sarah Pancoast. Therefore, plaintiffs who are the successors-in-interest of
H.M. Pancoast and Sarah Pancoast are not entitled to just compensation under the Fifth
Amendment. <u>See</u> <u>Wyatt</u>, 271 F.3d at 1096; <u>see also</u> <u>Cienega Gardens</u>, 331 F.3d at 1328
("For any Fifth Amendment takings claim, the complaining party must show it owned a
distinct property interest at the time it was allegedly taken . . . .").

V.     Conclusion

Until the filing of plaintiffs' Sur-Reply, the parties have disputed which of
plaintiffs' properties relate to the Four Conveyances. Def.'s Resp. 9; Def.'s Reply 5-7;
Pls.' Mem. 4-13.

In their Motion for Partial Summary Judgment, Memorandum of Law in Support of
Motion for Partial Summary Judgment, Proposed Findings of Uncontroverted Fact,
Proposed Findings of Uncontroverted Fact in Response to Defendant's Cross-Motion for
Summary Judgment, and Response to Defendant's Cross-Motion for Summary Judgment,
plaintiffs assert that Bama Sea Products, Inc., Peter Denne Property Holdings, Inc., Joel
M. and Jared M. Samon, Billie James and Laura E. Donald and SBJ Resch Family
Partnership Ltd. are the successors-in-interest to Janet M. Hayward and H.E. Hayward.
Pls.' Mem. 6. Defendant asserts that none of the plaintiffs is a successor-in-interest to
Janet M. Hayward and H.E. Hayward. Def.'s Reply 6. Plaintiffs assert that Johnston

Properties, LLC is the successor-in-interest to Harold W. Gilbart and Emma Gilbart.  Pls.' Mem. 8.  Defendant asserts that Johnston Properties, LLC, Larry Ritzenthaler and Labar Enterprises, Inc. are the successors-in-interest to Harold W. Gilbart and Emma Gilbart. Def.'s Reply 6.  Plaintiffs assert that Johnston Properties, LLC, Larry Ritzenthaler, Labar Enterprises, Inc. and Whispell Foreign Cars, LLC are the successors-in-interest to Wilfred Ainsworth et ux.  Pls.' Mem. 9.  Defendant asserts that Whispell Foreign Cars, Inc. is the successor-in-interest to Wilfred Ainsworth et ux.  Def.'s Reply 6.  Plaintiffs assert that Ronald Hendriex, Connie and James Howard Batton, Vito C. Farese and Whispell Foreign Cars, Inc. are the successors-in-interest to H.M. Pancoast and Sarah Pancoast.  Pls.' Mem. 10.  Defendant asserts that Ronald Hendriex, Connie and James Howard Batton and Vito C. Farese are the successors-in-interest to H.M. Pancoast and Sarah Pancoast.  Def.'s Reply 6.  The chart summarizing these assertions provided by plaintiffs in their Sur-Reply is attached to the end of this opinion.

However, in their Sur-Reply, plaintiffs indicate indifference to the parties' dispute concerning which of plaintiffs' properties relate to the Four Conveyances:

> Plaintiffs are willing for the Court to grant summary judgment assuming the railroad's interest in the right-of-way across the property of Bama Sea Products and the Battons was established by the railroad building a railway without any recorded grant from the original landowner.  And, for the seven properties for which the government contends a different original grant established that specific segments of right-of-way, Plaintiffs are willing for this Court to enter judgment assuming the respective segment of the right-of-way was established by the instrument the government identifies.

The position taken by plaintiffs in their Sur-Reply regarding the claims of Bama Sea Products, Connie and James Howard Batton and "the seven other properties for which the government contends a different original grant established that specific segments of the right-of-way" is inconsistent with plaintiffs' Motion for Partial Summary Judgment, Memorandum of Law in Support of Motion for Partial Summary Judgment, Proposed Findings of Uncontroverted Fact, Proposed Findings of Uncontroverted Fact in Response to Defendant's Cross-Motion for Summary Judgment, and Response to Defendant's Cross-Motion for Summary Judgment (collectively, Prior Filings).  Plaintiffs do not articulate the legal and factual basis for their indifference.  The court will disregard this aspect of plaintiffs' Sur-Reply and considers only plaintiffs' assertions in their Prior Filings regarding which plaintiffs' properties relate to the Four Conveyances.

The claims that plaintiffs assert correspond to the Hayward, Gilbart, Ainsworth and Pancoast Conveyances in plaintiffs' Prior Filings are DENIED as follows:  (1) Bama Sea

Products, Inc.'s claim relating to the Hayward Conveyance; (2) Peter Denne Property Holdings, Inc.'s claim relating to the Hayward Conveyance; (3) Joel M. and Jared M. Samon's claim relating to the Hayward Conveyance; (4) Billie James and Laura E. Donald's claim relating to the Hayward Conveyance; (5) SBJ Resch Family Partnership Ltd.'s claim relating to the Hayward Conveyance; (6) Johnston Properties, LLC's claim relating to the Gilbart Conveyance; (7) Johnston Properties, LLC's claim relating to the Ainsworth Conveyance; (8) Whispell Foreign Cars, Inc.'s claim relating to the Ainsworth Conveyance; (9) Labar Enterprises, Inc. and Larry J. Ritzenthaler's claims relating to the Ainsworth Conveyance; (10) Ronald Hendriex's claim relating to the Pancoast Conveyance; (11) Connie and James Howard Batton's claim relating to the Pancoast Conveyance; (12) Whispell Foreign Cars, Inc.'s claim relating to the Pancoast Conveyance; and (13) Vito C. Farese's claim relating to the Pancoast Conveyance.

In accordance with the foregoing, the court GRANTS-IN-PART and DENIES-IN-PART defendant's Cross-Motion for Summary Judgment and DENIES-IN-PART plaintiffs' Motion for Summary Judgment. The parties shall FILE additional briefing in accordance with the schedule in note 2 above. All other claims will be addressed in further proceedings.


IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge

32