# In the United States Court of Federal Claims

No. 09-315L

(E-Filed:  August 29, 2011)

|  |  |  |
|---|---|---|
| WHISPELL FOREIGN CARS, INC., ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Fifth Amendment Rails-to-Trails |
| | ) | Takings Claim; Interest Acquired |
| | ) | by Railroad by Adverse |
| v. | ) | Possession; Ordinance Conveyed |
| | ) | an Easement to Railroad |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Mark F. Hearne, II, Clayton, MO, for plaintiffs.  Lindsay S.C. Brinton and Meghan S. Largent, Washington, DC, of counsel.

Carol L. Draper, with whom was Ignacia S. Moreno, Assistant Attorney General, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

HEWITT, Chief Judge

I.      Introduction

This is a rails-to-trails case brought by Whispell Foreign Cars, Inc., et al. (plaintiffs).  Plaintiffs claim that the government effected a taking of their property when it converted a railroad right of way to a trail pursuant to the National Trails System Act Amendments of 1983 (the Trails Act Amendments), Pub. L. No. 98-11, 97 Stat. 42, to the National Trails System Act (Trails Act), Pub. L. No. 90-543, 82 Stat. 919 (1968) (codified as amended at 16 U.S.C. § 1241 (2006)).  Pls.' Mem. of Law in Supp. of Mot. for Partial Summ. J. (plaintiffs' Memorandum or Pls.' Mem.), Docket Number (Dkt. No.) 31, at 1.

Plaintiffs request the court to enter partial summary judgment holding that the government has taken their property in violation of the Fifth Amendment and is therefore obligated to pay plaintiffs just compensation. Pls.' Mem. 2.

Defendant cross-moves for summary judgment contending that Tampa & Gulf Coast Railroad Co. (individually and/or collectively with its successors, as the context requires, Tampa & Gulf Coast) acquired a fee simple interest in plaintiffs' property and that the government is therefore not obligated to pay plaintiffs just compensation. Def.'s Cross-Mot. for Summ. J., Opp'n to Pls.' Mot. for Partial Summ. J., and Mem. in Supp. Thereof (defendant's Response or Def.'s Resp.), Dkt. No. 38, at 1-2.

Before the court are Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 29, filed June 16, 2010; plaintiffs' Memorandum, Dkt. No. 31, filed June 16, 2010; Plaintiffs' Proposed Findings of Uncontroverted Fact (PFUF I), Dkt. No. 30, filed June 16, 2010; Defendant's Responses and Objections to Plaintiffs' Proposed Findings of Uncontroverted Fact (Def.'s Resp. to PFUF I), Dkt. No. 40, filed July 28, 2010; defendant's Response, Dkt. No. 38, filed July 28, 2010; Defendant's Proposed Findings of Uncontroverted Fact in Support of its Cross-Motion for Summary Judgment (DFUF), Dkt. No. 39, filed July 28, 2010; Plaintiffs' Responses to Defendant's Proposed Findings of Uncontroverted Fact in Support of its Cross-Motion for Summary Judgment (Pls.' Resp. to DFUF), Dkt. No. 49, filed October 22, 2010; Plaintiffs' Proposed Findings of Uncontroverted Fact in Response to Defendant's Cross-Motion for Summary Judgment (PFUF II), Dkt. No. 50, filed October 22, 2010; Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment (Pls.' Resp.), Dkt. No. 48, filed October 22, 2010; Defendant's Reply in Support of Cross-Motion for Partial Summary Judgment, and Opposition to Plaintiffs' Motion for Partial Summary Judgment (Def.'s Reply), Dkt. No. 56, filed November 23, 2010; Defendant's Objections and Response to Plaintiffs' Proposed Findings of Uncontroverted Fact in Response to Defendant's Cross-Motion for Summary Judgment (Def.'s Resp. to PFUF II), Dkt. No. 57, filed November 23, 2010; Plaintiffs' Sur-Reply in Support of their Motion for Partial Summary Judgment and in Response to the Government's Reply in Support of its Cross-Motion for Partial Summary Judgment (Pls.' Sur-Reply), Dkt. No. 62, filed December 15, 2010; Defendant's Supplemental Reply in Support of Cross-Motion for Partial Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment (Def.'s Supp. Brief), Dkt. No. 64, filed January 28, 2011; Plaintiffs' Supplemental Memorandum in Support of Their Cross-Motion for Partial Summary Judgment Relating to Segments of Right-of-Way Referenced in Ordinance 429 and for Which There is No Recorded Conveyance (Pls.' Supp. Brief), Dkt. No. 68, filed February 14, 2011; Motion by Bama Sea Products, Inc., Peter Denne Property Holdings, Inc. and the Batton, Samon, and Resch Families Requesting this Court to Reconsider its Dismissal of Their Claims (plaintiffs' Motion for Reconsideration or Pls.' Mot. Recons.), Dkt. No. 69,

filed February 28, 2011; Defendant's Response to Plaintiffs' Motion for Reconsideration (Def.'s Resp. Recons.), Dkt. No. 74, filed March 30, 2011; Plaintiffs' Reply in Support of Motion for Reconsideration (Pls.' Reply Recons.), Dkt. No. 79, filed April 18, 2011; the Parties' Joint Stipulation in Response to this Court's June 7, 2011 Order (Stipulation I), Dkt. No. 83, filed June 17, 2011; Defendant's Supplemental Memorandum Addressing Ordinance 429 (Def.'s 429 Brief), Dkt. No. 86, filed July 7, 2011; Plaintiffs' Supplemental Brief on Ordinance 429 (Pls.' 429 Brief), Dkt. No. 87, filed July 7, 2011; the parties' Second Joint Stipulation (Stipulation II), Dkt. No. 89, filed July 12, 2011; and Plaintiffs' Reply Brief on Ordinance 429 (Pls.' 429 Reply), Dkt. No. 91, filed July 15, 2011.

II.     Background

    A.      The Trails Act

    Congress enacted the Trails Act Amendments to address the national problem of declining use of rail tracks and resulting removal of tracks.  Preseault v. Interstate Commerce Comm'n (Preseault I), 494 U.S. 1, 5 (1990).  The Trails Act Amendments authorize the Interstate Commerce Commission (Commission or ICC)[1] to preserve railroad rights of way not currently in use for rail service for possible future use by converting unused rights of way to recreational trails.  Id. at 6; see 16 U.S.C. § 1241.

    In order for a railroad right of way to be converted to a recreational trail, the railroad must first initiate abandonment proceedings with the Surface Transportation Board (STB) under 49 U.S.C. § 10903 (2006) or seek an exemption under 49 U.S.C. § 10502.[2]  Caldwell v. United States (Caldwell I), 57 Fed. Cl. 193, 195 (2003), aff'd, 391

---

    [1]The Transportation Act of 1920, 41 Stat. 456, 477-78, gave the Interstate Commerce Commission (ICC) jurisdiction over railroad abandonments.  RLTD Ry. Corp. v. Surface Transp. Bd., 166 F.3d 808, 810 (6th Cir. 1999).  "Pursuant to the ICC Termination Act of 1995, 109 Stat. 803, the ICC ceased to exist.  Authority over abandonment applications is now held by the [Surface Transportation Board (STB)]."  Id.; see 49 U.S.C. § 10903 (2006).

    [2]The Federal Circuit has described exemption as less involved than standard abandonment:

        Authorization of abandonment pursuant to the exemption procedures of section 10502 is less involved than the standard abandonment proceedings detailed in section 10903 and can be invoked under the statute when it:
        (1) is not necessary to carry out the transportation policy of section 10101 of [Title 49]; and
        (2) either (A) the transaction or service is of limited scope; or (B) the [full

F.3d 1226 (Fed. Cir. 2004).  If authority to abandon is granted, and the railroad carries out the abandonment, the STB's jurisdiction over the railroad right of way usually terminates. Hayfield N. R.R. v. Chicago & N. W. Transp. Co., 467 U.S. 622, 633-34 (1984).  A party interested in acquiring or using the railroad right of way may request a certificate of interim trail use (CITU) or a notice of interim trail use (NITU) from the STB.[3]  49 C.F.R. § 1152.29(a), (c)-(d) (2010).

If a request for an NITU is received, and the railroad indicates that it is willing to negotiate an "interim trail use/rail banking agreement" (Trails Act Agreement), the STB[4] issues an NITU.  49 C.F.R. § 1152.29(d)(1);[5] Caldwell I, 57 Fed. Cl. at 195 (citing Goos v. Interstate Commerce Comm'n, 911 F.2d 1283, 1295 (8th Cir. 1990); 49 C.F.R. § 1152.29(b)(1)).  An NITU preserves the STB's jurisdiction, Caldwell v. United States (Caldwell II), 391 F.3d 1226, 1230 (Fed. Cir. 2004), and affords the railroad and the authorized trail group 180 days to negotiate a Trails Act Agreement, Caldwell I, 57 Fed. Cl. at 195; 49 C.F.R. § 1152.29(d)(1).  If the parties do not reach a rail banking and interim Trails Act agreement within 180 days, the NITU authorizes the railroad to abandon the line.  Caldwell I, 57 Fed. Cl. at 195 (citing Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd., 158 F.3d 135, 139 (D.C. Cir. 1998)).  "If an agreement is reached, the NITU automatically authorizes the interim trail use.  If the [STB] takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service."  Id.

---

abandonment proceedings are] not needed to protect shippers from the abuse of market power.

Caldwell v. United States, 391 F.3d 1226, 1228 n.2 (Fed. Cir. 2004) (brackets in original) (citing 49 U.S.C. § 10502(a) (2000)).  "In practice, exemption proceedings are appropriate if no local traffic has run on the line in at least two years."  Id. at 1229 (citing Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd., 158 F.3d 135, 138 n.4 (D.C. Cir. 1998); see 49 C.F.R. § 1152.50(b) (2010) (stating that "[a]n abandonment or discontinuance of service or trackage rights is exempt if the carrier certifies that no local traffic has moved over the line for at least 2 years").

[3]Certificates of interim trail use (CITUs) are issued in regulated abandonment proceedings.  49 C.F.R. § 1152.29(c) (2010).  Notices of interim trail use (NITUs) are issued in exemption proceedings.  49 C.F.R. § 1152.29(d).

[4]See supra note 1.

[5]49 C.F.R. § 1152.29(d)(1) provides that "[i]f continued rail service does not occur under 49 U.S.C. [§] 10904 and § 1152.27 and a railroad agrees to negotiate an interim trail use/rail banking agreement, then the [STB] will issue" an NITU.  49 C.F.R. § 1152.29(d)(1).

(citations omitted); 49 C.F.R. § 1152.29(d)(2).

B.     The NITU

In March 2004 Tampa & Gulf Coast's successor, CSX Transportation, Inc. (CSX), filed a petition to abandon the railroad.  Def.'s Resp. Defendant's Exhibit (DX) A (STB NITU); PFUF I Plaintiffs' Exhibit (PX) 1-QQ (STB NITU).  In May 2004 the Chairman of the Pinellas County Commission wrote to the Secretary of the STB stating that "Pinellas County has just recently became aware of the abandonment procedure step taken by [CSX] concerning a segment of rail line in St. Petersburg."  PFUF I PX 1-CCC (Letter from the Chairman of the Pinellas County Commission).  The Chairman informed the STB that "we are documenting our interest in establishing a trail use for that property, as an extension of the Pinellas Trail. . . .  If we are successful through the abandonment procedure and obtain this property, the Pinellas Trail will link the downtown area of St. Petersburg to the rest of the county by way of this multipurpose trail.'"  PFUF I PX 1-CCC (Letter from the Pinellas County Commission).  CSX agreed to negotiate with Pinellas County, PFUF I PX 1-DDD (Letter Re Abandonment Exemption), and the STB issued an NITU for the railroad, PFUF I PX 1-QQ (STB NITU); Def.'s Resp. DX A (STB NITU).  In December 2005 CSX and The Trust for Public Land (TPL) reached an agreement pursuant to the NITU, and CSX executed a quitclaim deed to TPL.  PFUF I PX 1-A (CSX & TPL Deed); Def.'s Resp. DX B (CSX & TPL Deed).  The right of way was subsequently conveyed by TPL to the State of Florida.  See Def.'s Resp. DX I (Counteroffer & Purchase Agreement). In 2007 Pinellas County constructed a public recreational trail on the right of way where Tampa & Gulf Coast once operated a railroad, see PFUF I PX 1-BBB (Trail Extension Plans for Project No. 06103-612); PFUF I PX 1-FFF (Photographs from Pinellas County documenting construction of the Pinellas Trail); PFUF I PX 1-GGG (Trail Extension Plans for Project No. 06103-112), and this suit followed.

C.     The Fifth Amendment Takings Clause

The Trails Act is subject to the Fifth Amendment Takings Clause.  Preseault I, 494 U.S. at 12-16.  When the government takes private property pursuant to the Trails Act, the government must provide just compensation.  See Caldwell II, 391 F.3d at 1229; see also Preseault I, 494 U.S. at 12-16.  However, only those individuals "with a valid property interest at the time of the taking are entitled to compensation."  Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) (citations omitted); see Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . .").

In a rails-to-trails takings case, a "taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Caldwell II, 391 F.3d at 1228 (citations omitted). "The issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." Id. at 1233-34 (emphasis omitted); see also Ladd v. United States, 630 F.3d 1015, 1020 (Fed. Cir. 2010).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) explained that a rails-to-trails takings claim presents three primary questions:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States (Preseault II), 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc).

D.    Procedural History

In mid-2010 the parties cross-moved for partial summary judgment regarding, among other things, the interest conveyed to Tampa & Gulf Coast by four conveyances, the Hayward, Ainsworth, Gilbart and Pancoast Conveyances (the Four Conveyances), executed in the early 1900s. Pls.' Mem. passim; Def.'s Resp. passim. In February 2011 the court issued an opinion interpreting the Four Conveyances. Order and Op. of Feb. 7, 2011, Dkt. No. 67 passim. The court held that the Four Conveyances granted fee simple title to Tampa & Gulf Coast and accordingly dismissed the claims of the plaintiffs whose property interests, according to plaintiffs' filings,[6] were based on the Four Conveyances.[7]

---

[6]In Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment (Pls.' Mem.), Docket Number (Dkt. No.) 31, and Plaintiffs' Proposed Findings of Uncontroverted Fact (PFUF I), Dkt. No. 30, plaintiffs asserted that Bama Sea Products, Inc., Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family Partnership Ltd. are the successors-in-interest to Janet M. Hayward and H.E. Hayward. Pls.' Mem. 6; PFUF I ¶¶ 52, 96, 100, 104. Additionally, plaintiffs asserted that Connie Batton and James Howard Batton are the successors-in-interest to H.M. Pancoast and Sarah Pancoast.

Order and Op. of Feb. 7, 2011 30-32.

Plaintiffs subsequently filed a Motion for Reconsideration requesting the court to reconsider its dismissal of the claims of plaintiffs Bama Sea Products, Inc., Peter Denne Property Holdings, Inc., Connie and James Howard Batton, Joel M. and Jared M. Samon, and SBJ Resch Family Partnership Ltd.  Pls.' Mot. Recons. 1.  Plaintiffs contended that, in their Sur-Reply, Pls.' Sur-Reply 3, they changed their position regarding which conveyances the court must interpret to decide the claims, Pls.' Mot. Recons. 2-3.  In its response to plaintiffs' Motion for Reconsideration, defendant also changed its position regarding which conveyances the court must interpret to decide the claims of Peter Denne Property Holdings, Inc., Joel M. and Jared M. Samon, and SBJ Resch Family Partnership Ltd.  Def.'s Resp. Recons. 5.  The court then ordered the parties to stipulate to the conveyance or other evidence that the court must interpret to decide the claims of each plaintiff.  Op. and Order of June 7, 2011, Dkt. No. 82, at 4.  The parties have now submitted their stipulations, see Stipulation I; Stipulation II, and most of the claims dismissed by the court in its February 2011 opinion are unaffected.  In particular, the court's dismissal of the claims of Connie and James Howard Batton,[8] Vito C. Farese,

---

Pls.' Mem. 10; PFUF I ¶ 56.

[7]Specifically, the court dismissed the following claims:  (1) Bama Sea Products, Inc.'s claim relating to the Hayward Conveyance; (2) Peter Denne Property Holdings, Inc.'s claim relating to the Hayward Conveyance; (3) Joel M. and Jared M. Samon's claim relating to the Hayward Conveyance; (4) Billie James and Laura E. Donald's claim relating to the Hayward Conveyance; (5) SBJ Resch Family Partnership Ltd.'s claim relating to the Hayward Conveyance; (6) Johnston Properties, LLC's claim relating to the Gilbart Conveyance; (7) Johnston Properties, LLC's claim relating to the Ainsworth Conveyance; (8) Whispell Foreign Cars, Inc.'s claim relating to the Ainsworth Conveyance; (9) Labar Enterprises, Inc. and Larry J. Ritzenthaler's claims relating to the Ainsworth Conveyance; (10) Ronald Hendriex's claim relating to the Pancoast Conveyance; (11) Connie and James Howard Batton's claim relating to the Pancoast Conveyance; (12) Whispell Foreign Cars, Inc.'s claim relating to the Pancoast Conveyance; and (13) Vito C. Farese's claim relating to the Pancoast Conveyance.  Order and Op. of Feb. 7, 2011, Dkt. No. 67, at 31-32.

[8]In their Motion for Reconsideration, plaintiffs contended that none of the Four Conveyances is relevant to the claim of Connie and James Howard Batton.  Pls.' Mot. for Recons., Dkt. No. 69, at 1.  Additionally, defendant contends that "the Court linked the Batton property to the Hayward conveyance, and both parties linked it to the Pancoast conveyance."  Def.'s Resp. to Pls.' Mot. for Recons., Dkt. No. 74, at 5 (internal citations omitted).  The court did not link the property of Connie Batton and James Howard Batton to the Hayward Conveyance.  The court linked the property of Connie Batton and James Howard Batton to the Pancoast Conveyance.  Order and Op. of Feb. 7, 2011 31-32 ("The claims that plaintiffs assert

Whispell Foreign Cars, Inc. and Ronald Hendriex based on the Pancoast Conveyance is unaffected; the court's dismissal of the claims of Billie James and Laura E. Donald based on the Hayward Conveyance is unaffected; the court's dismissal of the claim of Johnston Property, LLC based on the Gilbart Conveyance is unaffected; and the court's dismissal of the claims of Whispell Foreign Cars, Inc. and LaBar Enterprises[9] based on the Ainsworth Conveyance is unaffected.  The remaining claims addressed in plaintiffs' Motion for Reconsideration, in particular, the claims of Bama Sea Products, Inc., Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family Partnership Ltd. are discussed in Part IV.C.

Two claims addressed by the parties in their cross-motions for summary judgment remain.  First, the court must determine the property interest conveyed to Tampa & Gulf Coast by an ordinance passed in 1914 by the City of St. Petersburg, Florida (Ordinance 429), St. Petersburg, Fla., Ordinance 429 (Apr. 16, 1914).[10]  Plaintiffs contend that the segment of the railroad established by Ordinance 429 (the 429 segment) "granted the railroad a right to locate the railway line within the city's existing easement for a street," Pls.' Sur-Reply 10, and the government therefore effected a taking of their property when it converted a railroad right of way to a trail pursuant to the Trails Act Amendments, see Pls.' 429 Reply 5-6.  Defendant contends that Tampa & Gulf Coast acquired a fee interest in the property conveyed by Ordinance 429, and that the government did not therefore effect a taking of plaintiffs' property.  See Def.'s 429 Brief 2.  Second, the court must determine whether Tampa & Gulf Coast acquired fee simple title to the segment of the right of way without a recorded conveyance (the segment without a recorded conveyance) by adverse possession.  Plaintiffs contend that "[u]nder Florida law, the greatest interest the Railroad could possibly have obtained in the land across which it built a rail line

---

correspond to the Hayward, Gilbart, Ainsworth and Pancoast Conveyances in plaintiffs' Prior Filings are DENIED as follows:  . . . (11) Connie and James Howard Batton's claim relating to the Pancoast Conveyance . . . .").  The parties have now stipulated that the Pancoast Conveyance is relevant to the claim of Connie and James Howard Batton.  Second Joint Stipulation (Stipulation II), Dkt. No. 89, at 3.  Because the Pancoast Conveyance conveyed fee simple title to Tampa & Gulf Coast, Order and Op. of Feb. 7, 2011 30, plaintiffs' Motion for Reconsideration as to the claim of Connie and James Howard Batton is MOOT.

[9]The court dismissed the claim of LaBar Enterprises after interpreting the Ainsworth Conveyance.  Order and Op. of Feb. 7, 2011 31-32.  The parties have since agreed that the Gilbart Conveyance, rather than the Ainsworth Conveyance, is relevant to LaBar Enterprises' claim.  Stipulation II 3.

[10]A copy of Ordinance 429 is attached to this court's Order of June 27, 2011, Dkt. No. 85, at 2.

without a recorded conveyance from the owner is an easement by prescription." Pls.'
Mem. 32. Defendant contends that Tampa & Gulf Coast acquired by adverse possession
fee title to the segment without a recorded conveyance. Def.'s Supp. Brief 12. The court
now addresses these claims.

III.   Legal Standards

    A.   Subject Matter Jurisdiction

Because subject matter jurisdiction is a threshold matter, it must be established
before the case can proceed on the merits. Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir.
2007). Plaintiffs bear the burden of establishing subject matter jurisdiction, and the court
may determine whether they have met this burden once they have had an opportunity to be
heard on the matter. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.
Cir. 1988) (citations omitted). If the court determines that it lacks subject matter
jurisdiction, it must dismiss the claim. Rules of the United States Court of Federal Claims
(RCFC) 12(h)(3); Steel Co., 523 U.S. at 94; Matthews v. United States, 72 Fed. Cl. 274,
278 (2006).

Like all federal courts, the United States Court of Federal Claims (CFC) is a court
of limited jurisdiction. The jurisdiction of the CFC is set forth in the Tucker Act, 28
U.S.C. § 1491 (2006). The Tucker Act provides that the CFC has jurisdiction to hear
claims against the United States founded upon "the Constitution, or any Act of Congress
or any regulation of an executive department, or upon any express or implied contract with
the United States, or for liquidated or unliquidated damages in cases not sounding in tort."
28 U.S.C. § 1491(a)(1). However, the Tucker Act "does not create any substantive right
enforceable against the United States for money damages." United States v. Testan, 424
U.S. 392, 398 (1976). A plaintiff must establish an independent substantive right to
money damages from the United States, that is, a money-mandating source within a
contract, regulation, statute or constitutional provision itself, in order for the case to
proceed. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed.
Cir. 2008).

In a takings case, the money-mandating provision is the Fifth Amendment to the
Constitution. Schooner Harbor Ventures, Inc. v. United States, 569 F.3d 1359, 1362 (Fed.
Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005). The Fifth
Amendment reads, in relevant part, "[N]or shall private property be taken for public use,
without just compensation." U.S. Const. amend. V.

B.      Summary Judgment Standard of Review

The parties have cross-moved for summary judgment pursuant to RCFC 56.[11]  Pls.'
Mem. 2; Def.'s Resp. 1.  "The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  RCFC 56(a).[12]  The moving party has "the burden of
showing the absence of a genuine issue as to any material fact."  Adickes v. S. H. Kress &
Co., 398 U.S. 144, 157 (1970).  A fact is material if it might significantly affect the
outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where
the moving party has not disputed any facts contained in the non-movant's pleadings, the
court assumes all well-pleaded facts to be true and draws all applicable presumptions and
inferences in favor of the non-moving party.  See Univ. of W. Va., Bd. of Trs. v.
VanVoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002); Banks v. United States, 69 Fed. Cl.
206, 209 (2006).

"The party opposing the motion must point to an evidentiary conflict created on
the record; mere denials or conclusory statements are insufficient."  SRI Int'l v.
Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citing Barmag
Barmer Maschinenfabrik AG v. Murata Mach., Ltd. (Barmag), 731 F.2d 831, 836 (Fed.

---

[11]Effective July 15, 2011, the Rules of the United States Court of Federal Claims (RCFC)
were amended, changing the language and structure of Rule 56 to "reflect the corresponding
revision of [Federal Rule of Civil Procedure 56] that became effective December 1, 2010."
RCFC 56 Rules Committee Note (2011).  The parties' motions for summary judgment were filed
prior to July 15, 2011 and refer to the prior version of RCFC 56.  Because RCFC 56 remains the
same in substance, the court nevertheless applies the current version of RCFC 56.  See RCFC 86
("These rules and any subsequent amendments are applicable to all proceedings pending at the
time of the adoption of the revision or amendment or thereafter filed, except to the extent that the
court determines that their application to a pending action would not be feasible or would work
injustice, in which event the former procedure applies.").

[12]The interpretation of a deed is a question of law for the court.  Markman v. Westview
Instruments, Inc., 52 F.3d 967, 997 (Fed. Cir. 1995); Yaist v. United States, 17 Cl. Ct. 246, 253
(1989); Nourachi v. United States, 632 F. Supp. 2d 1101, 1110 (M.D. Fla. 2009) (Under Florida
law, "The interpretation of a deed, including the legal description of the boundaries set forth in
the deed, is a question of law for the Court to resolve.").  Similarly, the interpretation of a statute
is a question of law for the court.  Norfolk Dredging Co. v. United States, 375 F.3d 1106, 1108
(Fed. Cir. 2004) (stating that the "issue of statutory construction is a question of law"); Daniels v.
Fla. Dep't. of Health, 898 So. 2d 61, 64 (Fla. 2005); see State v. Hanna, 901 So. 2d 201, 204
(Fla. Dist. Ct. App. 2005) (stating that "the interpretation of a statute or an ordinance is a purely
legal matter").

Cir. 1984)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson</u>, 477 U.S. at 247-48 (emphasis omitted).

When parties cross-move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

C.     The Property Interests Created Under Florida Law

Whether an individual has a compensable private property interest is determined by state law.  <u>See</u> <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .").

Florida law directs the court to "consider the language of the entire instrument in order to discover the intent of the grantor, both as to the character of [the] estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent."  <u>Reid v. Barry</u>, 112 So. 846, 852 (Fla. 1927); <u>see also</u> <u>Thrasher v. Arida</u>, 858 So. 2d 1173, 1175 (Fla. Dist. Ct. App. 2003).  "With respect to deeds of conveyance, the general rule is that if there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language."  <u>Mason v. Roser</u>, 588 So. 2d 622, 624 (Fla. Dist. Ct. App. 1991) (citing, <u>inter alia</u>, <u>Saltzman v. Ahern</u>, 306 So. 2d 537, 539 (Fla. Dist. Ct. App. 1975)).  "If the provisions are ambiguous, extrinsic evidence may be examined to determine the intent of the parties at the time the document establishing the easement was created."  <u>Am. Quick Sign, Inc. v. Reinhardt</u>, 899 So. 2d 461, 465 (Fla. Dist. Ct. App. 2005) (citing, <u>inter alia</u>, <u>Kotick v. Durrant</u>, 196 So. 802, 804 (Fla. 1940)).

Similarly, statutory interpretation begins and, absent ambiguity, ends with the text of the statute.  "Before resorting to the rules of statutory interpretation, courts must first look to the actual language of the statute itself."  <u>Koile v. State</u>, 934 So. 2d 1226, 1230 (Fla. 2006).  "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent."  <u>Id.</u> at 1230-31.

D.     Prescription and Adverse Possession Under Florida Law

11

Under Florida law, "[i]n either prescription or adverse possession, the right is acquired only by actual, continuous, uninterrupted use by the claimant of the lands of another, for a prescribed period." <u>Downing v. Bird</u>, 100 So. 2d 57, 64 (Fla. 1958). Additionally, "the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner." <u>Id.</u>  In both prescription and adverse possession, "the use or possession must be inconsistent with the owner's use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment." <u>Id.</u>

"[I]n either prescription or adverse possession, the use or possession is presumed to be in subordination to the title of the true owner, and with his permission and the burden is on the claimant to prove that the use or possession is adverse." <u>Downing</u>, 100 So. 2d at 64.  The elements of prescription and adverse possession "must be proved by clear and positive proof, and cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture." <u>Id.</u> (citations omitted).  "Acquisition of rights by one in the lands of another, based on possession or use, is not favored in the law and the acquisition of such rights will be restricted." <u>Id.</u> at 65 (citations omitted).  "Any doubts as to the creation of the right must be resolved in favor of the owner." <u>Id.</u>

In addition, a potentially applicable Florida statute on adverse possession provides:

1.  To Be Land in Actual Occupation Only.– Where it shall appear that there has been an actual continued occupation for seven years of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely.

2.  Definition of Occupation and Possession Required.– For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:  1.  Where it has been protected by substantial enclosure; or, 2., where it has been usually cultivated or improved.

Fla. Stat. Ann. § 1722 (West 1915) (internal citations omitted).

IV.   Discussion

12

A.      Ordinance 429

As the Federal Circuit has stated, see supra Part II.C, the first question a rails-to-trails takings claim presents is, "[W]ho owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates[?]"  Preseault II, 100 F.3d at 1533.

Plaintiffs contend that Ordinance 429 "granted the railroad a right to locate the railway line within the city's existing easement for a street."  Pls.' Sur-Reply 10.  Plaintiffs contend that Tampa & Gulf Coast "cannot have acquired title to the fee estate in the land by reason of [Ordinance 429] because the city did not own the land upon which the streets were built."  Id. at 9.  Defendant contends that Tampa & Gulf Coast "acquired a fee simple interest in the property covered by Ordinance 429."  Def.'s 429 Brief 2.  The material fact--that is, the text of Ordinance 429--is not in dispute.

Ordinance 429 provides:

An Ordinance granting to the Tampa & Gulf Coast Railroad Company, a corporation doing an interstate business, organized under the laws of Florida, its successors and assigns, the right and privilege of constructing, maintaining, and operating railway tracks through, on and along certain streets and avenues in the City of St. Petersburg, Florida, and providing for an election to be held to ratify such Ordinance in accordance with the Charter.

. . . .

Section 1.  That the City of St. Petersburg, Florida, does hereby give and grant to the Tampa & Gulf Coast Railroad Company, a corporation doing an interstate business, organized under the laws of Florida, its successors and assigns, the perpetual right and privilege to construct, maintain and operate in the city of St. Petersburg, Florida, on, through and over the following streets or avenues in the space extending thereon twenty (20) feet on either side of the center line of said streets or avenues, to-wit:

. . . Provided, however, that no part of said streets or avenues shall be used for the purpose of freight terminals.  All such tracks shall be of standard gauge with rails of ample strength to accommodate heavy traffic, and said grantees shall have the right and privilege of running and operating said line or lines of railway track with steam locomotives and cars.

13

. . . .

St. Petersburg, Fla., Ordinance 429 (Apr. 16, 1914) (emphases added).

At issue in the interpretation of Ordinance 429 is the plain language of the ordinance itself.  Koile, 934 So. 2d at 1230 ("Before resorting to the rules of statutory interpretation, courts must first look to the actual language of the statute itself.").  Similarly, "With respect to deeds of conveyance, the general rule is that if there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language."  Mason, 588 So. 2d at 624 (citing, inter alia, Saltzman, 306 So. 2d at 539).

The parties' dispute concerns "the character of the estate" conveyed, in particular, whether Ordinance 429 conveys an estate in fee simple or an easement.  In support of their contentions, the parties dispute the meaning of the granting clause.

Plaintiffs contend that the express terms of Ordinance 429 "limited [it] to operation of a railway and did not purport to convey fee title."  Pls.' 429 Reply 4.  Defendant contends that the use of the word "perpetual," the lack of a reversionary clause and the lack of the phrase "to railroad purposes" in Ordinance 429 indicates that Ordinance 429 conveys an estate in fee simple.  Def.'s Supp. Brief 6.  The court considers each argument in turn.

The text of the granting clause supports plaintiffs' contention that Ordinance 429 does not "purport to convey fee title."  Pls.' 429 Reply 4.  Importantly, Ordinance 429 grants "the right and privilege of constructing, maintaining, and operating railway tracks through, on and along certain streets and avenues in the City of St. Petersburg, Florida."  Ordinance 429 (Apr. 16, 1914) (emphasis added).  Ordinance 429 does not, at any point, grant "land" or purport to convey fee title to the right of way.  See id. passim.

Defendant contends that Ordinance 429 does not "expressly limit Tampa & Gulf[ Coast's] use of the property to railroad purposes."  Def's Supp. Brief 6.  Defendant's contention is simply not supported by the text of Ordinance 429.  Ordinance 429 grants "the right and privilege of constructing, maintaining, and operating railway tracks through, on and along certain streets and avenues in the City of St. Petersburg, Florida."  Ordinance 429 (Apr. 16, 1914) (emphasis added).  Because Ordinance 429 grants only "the right and privilege" of operating a railroad, rather than an interest in "land," Ordinance 429 conveyed only an easement to Tampa & Gulf Coast.  Cf. Order and Op. of Feb. 7, 2011 21-22 (finding that a conveyance of "land" indicated that the Gilbart Conveyance

conveyed fee simple title rather than an easement).  Because the language of Ordinance 429 clearly indicates that it is granting only a right and privilege to operate a railroad, see Ordinance 429 (Apr. 16, 1914), it is not  necessary, as defendant contends, Def.'s Supp. Brief 6, that the text contain additional language limiting the use of the property "to railroad purposes."  That limitation is explicit in the text of the granting clause.

Defendant nevertheless contends that "the grant of perpetual rights and absence of a reversionary clause . . . are consistent with conveying a property interest [in fee], not merely a right to use the property."  Def.'s Supp. Brief 7.  It is true, as defendant contends, id., that Ordinance 429 does not contain a reversionary clause and is not limited in time.  If the granting clause lacked clarity, the absences of both a reversionary clause and a limitation in time might lend support to the view that Ordinance 429 conveyed an estate in fee.  However, Ordinance 429 clearly indicates that it is granting only "the right and privilege of constructing, maintaining, and operating railway tracks through, on and along certain streets and avenues in the City of St. Petersburg, Florida."  Ordinance 429 (Apr. 16, 1914) (emphasis added).  Moreover, even if ambiguity existed, grants from the sovereign are interpreted in a manner that preserves the sovereign's title unless otherwise required by "an unavoidable construction."  23 Am. Jur. 2d Deeds § 201 (2002).

Because Ordinance 429 grants only "the right and privilege of constructing, maintaining, and operating railway tracks through, on and along certain streets and avenues in the City of St. Petersburg, Florida," Ordinance 429 conveyed an easement for a limited purpose, rather than an estate in fee, to Tampa & Gulf Coast.[13]

As the Federal Circuit has stated, see supra Part II.C, the second question a rails-to-trails takings claim presents is, "[I]f the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails[?]"  Preseault II, 100 F.3d at 1533.  The court next addresses whether or not use as a public recreational trail is within the scope of the easement created by Ordinance 429.

Defendant contends that "even if Tampa & Gulf [Coast] acquired an easement

_____

[13]Because the court has determined that, by its terms, Ordinance 429 conveyed only an easement to Tampa & Gulf Coast Railroad, it is unnecessary for the court to address plaintiffs' contention that Tampa & Gulf Coast "cannot have acquired title to the fee estate in the land by reason of [Ordinance 429] because the city did not own the land upon which the streets were built."  Pls.' Sur-Reply in Supp. of their Mot. for Partial Summ. J. and in Resp. to the Government's Reply in Supp. of its Cross-Mot. for Partial Summ. J. (Pls.' Sur-Reply), Dkt. No. 62, at 9.

under Ordinance 429 . . . the current uses of the corridor -- railbanking and interim trail use -- are within the scope of that easement." Def.'s Supp. Brief 17.  Defendant contends that Ordinance 429 "does not restrict Tampa & Gulf[ Coast's] use of the property to 'railroad purposes' or to any specified use."  Id.  Defendant further contends that "if this court were to interpret Ordinance 429 as implying a restriction limiting use of the subject corridor to railroad purposes, the current uses, interim trail use and railbanking fall within the scope of railroad purposes" because "railbanking preserves the corridor for future rail use."  Id.

    Plaintiffs contend that Ordinance 429 "was unequivocally and expressly limited to 'constructing, maintaining and operating railway tracks through, on and along certain streets and avenues.'"  Pls.' Supp. Brief 7 (quoting Ordinance 429 (Apr. 16, 1914)).

    In Preseault II, the Federal Circuit, interpreting Vermont law, see Preseault II, 100 F.3d at 1534, explained that:

> When the easements here were granted to the Preseaults' predecessors in title at the turn of the century, specifically for transportation of goods and persons via railroad, could it be said that the parties contemplated that a century later the easements would be used for recreational hiking and biking trails, or that it was necessary to so construe them in order to give the grantee railroad that for which it bargained? . . .  It is difficult to imagine that either party to the original transfers had anything remotely in mind that would resemble a public recreational trail.

Id. at 1542-43; Rogers v. United States, 90 Fed. Cl. 418, 432 (2009) (quoting Preseault II, 100 F.3d at 1542-43).

    Ordinance 429 grants only "the right and privilege of constructing, maintaining, and operating railway tracks through, on and along certain streets and avenues in the City of St. Petersburg, Florida."  Ordinance 429 (Apr. 16, 1914) (emphasis added).  The scope of the easement granted by Ordinance 429 must not increase "to any greater extent than reasonably necessary and contemplated at the time of the initial acquisition."  Crutchfield v. F.A. Sebring Realty Co., 69 So. 2d 328, 330 (Fla. 1954) (stating that there is "a general principle governing all easements, whether acquired by user, express grant, dedication, or by implication from the circumstances of a particular transaction, that the burden of a right of way upon the servient estate must not be increased to any greater extent than reasonably necessary and contemplated at the time of initial acquisition"); Rogers, 90 Fed. Cl. at 432 (quoting Crutchfield, 69 So. 2d at 330).  It cannot be said that in 1914 the City of St. Petersburg, Florida contemplated use of the right of way as a public recreational trail as a

16

method of preserving the corridor for future rail use.  See Rogers, 90 Fed. Cl. at 432 (citing Preseault II, 100 F.3d at 1542-43).  Public recreational trail use is "clearly different" from "operating railway tracks":

> "Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different.  In the one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation.  In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in exercise and recreation on foot or on bicycles."

Rogers, 90 Fed. Cl. at 432 (quoting Preseault II, 100 F.3d at 1542-43).  Ordinance 429 granted an easement limited to "constructing, maintaining, and operating railway tracks," Ordinance 429 (Apr. 16, 1914) (emphasis added), and the government effected a taking of plaintiffs' property by imposing a new easement for public recreational trail use on their property.

Because the court has determined that recreational trail use is not within the scope of the easement, the court need not determine at this time whether the easement was abandoned under Florida law.[14]  See Preseault II, 100 F.3d at 1533 (stating that the third question presented by a rails-to-trails takings claim is "even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking[?]").

B.      The Segment of the Railroad Without a Recorded Conveyance

The parties have agreed that neither Ordinance 429 nor any recorded conveyance is relevant to the claims of plaintiffs Jesse and Virginia T. Abrams and Bama Sea Products, Inc.  See Stipulation II 3.  Accordingly, the court must look to the law of adverse possession and prescriptive easement to determine the interest acquired by Tampa & Gulf Coast in the segment of the right of way located across the land of plaintiffs Jesse and Virginia T. Abrams and Bama Sea Products, Inc. (the segment without a recorded conveyance).  See Stipulation II 3.  The parties dispute the nature of the property interest Tampa & Gulf Coast obtained by its operation over the segment without a recorded

_____

[14]The issue of whether the easement had been abandoned by Tampa & Gulf Coast when the STB issued the NITU and the relevance of abandonment to the damages stage of this litigation will be the subject of further briefing, as discussed during the Telephonic Status Conference on July 19, 2011.

conveyance.  First, the court considers whether, as a matter of law, a railroad could obtain fee simple title by adverse possession under Florida law.  The court then addresses whether Tampa & Gulf Coast obtained fee simple title by adverse possession.

       1.       Whether a Railroad Can Obtain Fee Simple Title by Adverse Possession

     Plaintiffs contend that "[u]nder Florida law, the greatest interest the Railroad could possibly have obtained in the land across which it built a rail line without a recorded conveyance from the owner is an easement by prescription."  Pls.' Mem. 32.  Plaintiffs further contend that "[n]o Florida court has ever held a railroad may obtain title to land – as opposed to a prescriptive easement – by possession."  Pls.' Resp. 5.  Defendant argues that "plaintiffs' arguments are not supported by Florida precedent."  Def.'s Supp. Brief 14.

     Plaintiffs cite to dicta in three cases, <u>Florida Southern R. Co. v. Hill</u>, 23 So. 566, 567 (Fla. 1898), <u>Pensacola & Atlantic Railroad. v. Jackson</u> (<u>Pensacola</u>), 21 Fla. 146, 1884 WL 2143 (Fla. June 1884) and <u>Jacksonville, T. & K. W. Railway Co. v. Adams</u> (<u>Jacksonville</u>), 10 So. 465 (Fla. 1891), for the proposition that "[t]he Florida Supreme Court has repeatedly held where a railroad company took the land without agreement and without condemnation it obtains, at most, an easement in the land and the landowner retains the legal title to the land," Pls.' Supp. Brief 11 (quotations omitted).

     In <u>Florida Southern</u>, the landowners claimed that the railroad unlawfully and wrongfully entered upon their land "building, constructing, and erecting its rights of way and railway tracks upon and across said land."  <u>Florida Southern</u>, 23 So. at 567.  The landowners claimed that they were entitled to compensation for the railroad's taking of their land.  <u>Id.</u>  The court indicated that, when a railroad enters the land without consent and without instituting condemnation proceedings, the owner may treat his claim to compensation as a vendor's lien and foreclose in equity.  <u>Id.</u> at 570.  The court did not hold, as plaintiffs' briefing suggests, <u>see</u> Pls.' Supp. Brief 11-12, that "'where a railroad company took the land without agreement and without condemnation' it obtains, at most, 'an easement in the land' and the landowner 'retains the legal title to the land,'" <u>see</u> <u>Florida Southern</u>, 23 So. 566 <u>passim</u>.  The quoted portion of plaintiffs' brief patches together words from three disparate sentences of the court's opinion in <u>Florida Southern</u>. <u>See</u> <u>Florida Southern</u>, 23 So. at 569-70.

     In <u>Pensacola</u>, the railroad entered the landowner's land without first obtaining permission.  <u>Pensacola</u>, 1884 WL 2143, at *2.  Because the landowner had waited nine months before claiming that the railroad had not adequately compensated him for the loss of his property, the court held that the landowner could not enjoin the railroad from operating.  <u>Id.</u> at *2-*3.  The court also determined that, under the circumstances, the

landowner had not lost fee title to the land.  Id. at *3.  However, the court did not hold, as plaintiffs' briefing suggests, see Pls.' Supp. Brief 11,  that "'where a railroad company took the land without agreement and without condemnation' it obtains, at most, 'an easement in the land' and the landowner 'retains the legal title to the land,'" id.; see Pensacola, 1884 WL 2143 passim.  The Pensacola court simply does not address the law of adverse possession.

   In Jacksonville, the railroad had sought unsuccessfully to obtain the right to operate over the owner's land by condemnation.  Jacksonville, 10 So. at 466, 472.  The lower court ejected the railroad, and the owner filed a motion for a mandate for possession.  Id. at 466-67.  The court denied the owner's motion for a mandate for possession.  Id. at 472.  The portion of the Jacksonville opinion quoted by plaintiffs--"By these proceedings [the landowner] is not deprived of the title to the land.  The [railroad] acquires nothing more than the right to occupy it for railroad purposes."--appears in a discussion of an Iowa court decision, see id. at 468, and does not contain, as plaintiffs' briefing appears to suggest, see Pls.' Supp. Brief 11-13 (brackets in original), any holding by the Florida court.

   In addition, plaintiffs cite to Davis v. MCI Telecommunications Corp., 606 So. 2d 734 (Fla. Dist. Ct. App. 1992), in support of their contention that "the greatest interest the Railroad could possibly have obtained in the land across which it built a rail line without a recorded conveyance from the owner is an easement by prescription."  Pls.' Mem. 32.  As discussed in the court's February opinion, Order and Op. of Feb. 7, 2011 12-13, the Davis court reviewed an appeal of a judgment that dismissed plaintiffs' complaint against a telephone company for unlawful entry and unlawful detention of plaintiffs' property, Davis, 606 So. 2d at 734-35.  The Davis plaintiffs, who owned property encumbered by a railroad right of way, claimed that the telephone company buried telecommunications cable along the railroad easement located across plaintiffs' property without paying just compensation or obtaining permission.  Id. at 735.  They sought a determination that the telephone company acted illegally and an order that the telephone company must remove the telecommunications cable.  Id.  The court held that the Telegraph Act, Fla. Stat. § 362.02 (1989), authorized the telephone company to place buried cable along the railroad right of way without paying just compensation or obtaining permission from plaintiffs, Davis, 606 So. 2d at 737-38.  The court also stated that the Telegraph Act did not apply only to railroad rights of way held in fee simple title:

   The telegraph act would have been entirely futile if it depended on the
   assumption that all Florida railroads had obtained their rights-of-way years
   before in fee simple title.  Except to site a station house or similar land
   use here and there, the railroads had no need or desire for any interest
   except "right-of-way."

19

Id. at 738.  The fact that the Davis court stated that a railroad could, in many cases, operate over an easement does not require the conclusion that Tampa & Gulf Coast was prevented from acquiring an estate in fee by adverse possession or otherwise.  In fact, the court has previously found that Tampa & Gulf Coast obtained a fee simple title by deed in several properties.  Order and Op. of Feb. 7, 2011 passim.[15]

The cases relied on by plaintiffs for their contention that a railroad cannot acquire fee title by adverse possession are unpersuasive, while defendant has pointed to three cases indicating that a railroad can obtain fee title by adverse possession.  See Def.'s Supp. Brief 12, 14.  Citing to Tassapoulos v. Seaboard Coastline R.R., 353 So. 2d 867 (Fla. Dist. Ct. App. 1977), Seaboard Air Line Ry. Co. v. Atlantic Coast Line R. Co. (Seaboard), 158 So. 459 (Fla. 1935) and Dunscombe v. Loftin, 154 F.2d 963 (5th Cir. 1946), defendant contends that "[c]ontrary to [plaintiffs'] arguments, Tampa & Gulf[ Coast's] status as a railroad did not preclude it from gaining legal title by adverse possession," Def.'s Supp. Brief 12, 14.

The majority opinion in Tassapoulos consists of a single paragraph discussing the acquisition by a railroad of fee title, which appears to the court to find that a railroad can acquire fee title by adverse possession as to a parcel "actually occupied by the railroad's roadbed":

SMITH, Judge

The record titleholders to certain land in Clay County appeal from a judgment holding that the appellee railroad obtained title by adverse possession, without color of title, to a strip along one boundary of the tract.  While the record supports the trial court's judgment concerning a small parcel actually occupied by the railroad's roadbed, the record does not support the railroad's claim to a wider strip parallel to its track, the boundary of which is marked not by a substantial enclosure but only by power poles

---

[15]Plaintiffs also cite to two cases from other jurisdictions, Thompson v. E.I.G. Palace Mall, LLC, 657 N.W.2d 300, 304 (S.D. 2003) and Wheeling Stamping Co. v. Warwood Land Co., 412 S.E.2d 253, 255 (W. Va. 1991), Pls.' Sur-Reply 4 n.5, in support of their contention that "when the railroad only uses the strip of land for a right-of-way upon which the railroad laid tracts and across which the railroad runs trains, Plaintiffs have found no case in any jurisdiction ever holding the railroad acquired title and ownership of the land itself," Pls.' Sur-Reply 4 n.5 (emphasis omitted).  The court has not found the cases helpful to the interpretation of Florida law.

20

and lines on appellants' land.  Section 95.18, Florida Statutes (1975); <u>Downing v. Bird</u>, 100 So. 2d 57 (Fla. 1958).  The case will be remanded for entry of a conforming judgment.

REVERSED.

ERVIN, J., concurs.

RAWLS, Acting C. J., dissents.

RAWLS, Acting Chief Judge (dissenting)

In my opinion, there was competent, substantial evidence to support the trial judge's finding that appellee Seaboard acquired the disputed property by adverse possession.  <u>Kiser v. Howard</u>, 133 So. 2d 746 (Fla. Dist. Ct. App. 1961).

The statute cited by the <u>Tassapoulos</u> court provides:

Real property actions; adverse possession without color of title–When the occupant or those under whom he claims have been in actual continued occupation of real property for seven years under a claim of title exclusive of any other right, but not founded on a written instrument, judgment or decree, the property actually occupied shall be held adversely, if the person claiming adverse possession made a return of the property by proper legal description to the tax assessor of the county where it is located within one year after entering into possession and has subsequently paid all taxes and matured installments of special improvement liens levied against the property by the state county and municipality.

Fla. Stat. § 95.18 (1974).

Plaintiffs contend that the <u>Tassapoulos</u> opinion "never addresses the merits of the railroad's claim nor whether the 'title' the Clay County trial court recognized was title to the fee estate or title to an easement."  Pls.' Supp. Brief 21.

Plaintiffs' contention that the <u>Tassapoulos</u> court never addresses whether the "title" "was title to the fee estate or title to an easement," Pls.' Supp. Brief 21, is simply incorrect. The <u>Tassapoulos</u> court cites to Fla. Stat. § 95.18, see <u>Tassapoulos</u>, 353 So. 2d at 867, a statute providing for "adverse possession without color of title," Fla. Stat. § 95.18.

Because Section 95.18 sets out the requirements that individuals must satisfy to acquire fee title by adverse possession, see Fla. Stat. § 95.18, the court is unpersuaded by plaintiffs' argument that the Tassapoulos court may not have been referring to title to the fee estate obtained by adverse possession. See Pls.' Supp. Brief 21.

In Dunscombe, the issue before the United States Court of Appeals for the Fifth Circuit (Fifth Circuit) was whether plaintiff could sue for just compensation for lands taken for public use by eminent domain. Dunscombe, 154 F.2d at 965. Plaintiff requested leave to sue on an unfiled takings claim against the trustees of the railroad after the time for filing such claim had expired. Id. at 965-66. In determining whether the lower court abused its discretion by denying plaintiff the right to sue, the Fifth Circuit stated that "[t]he contention that the Railroad, having the power of eminent domain, cannot acquire title by adverse possession does not seem to be supported by Florida decisions." Id. at 967 (citing, inter alia, Seaboard, 158 So. 459).

Defendant also relies on Seaboard, 158 So. 459, in support of its contention that "[c]ontrary to [plaintiffs'] argument, Tampa & Gulf[ Coast's] status as a railroad did not preclude it from gaining legal title by adverse possession," Def.'s Supp. Brief 12. In Seaboard, Seaboard Air Line Railway Company (Seaboard Air) appealed a decree by the chancellor that Atlantic Coast Line Railroad Company (Atlantic Coast) acquired by adverse possession under color of title "legal title to the land as against [Seaboard Air], except as to the space occupied by the track and roadbed of what is usually known as the T. & J. Railroad Crossing." Seaboard, 158 So. at 460 (internal quotations omitted). The Supreme Court of Florida affirmed the decree stating that "[w]e are unable to say that the record disclosed a clear error on the part of the chancellor in the finding of fact as to the adverse possession [under color of title] by [Atlantic Coast]." Id. at 461. Although defendant in this case contends that Tampa & Gulf Coast acquired fee simple title by adverse possession without color of title, Seaboard nevertheless indicates that plaintiffs' contention that "[n]o Florida court has ever held a railroad may obtain title to land--as opposed to a prescriptive easement--by possession," Pls.' Resp. 5, is simply incorrect.

In addition, as defendant correctly points out, Def.'s Supp. Brief 12, it is well-settled that public entities and private corporations can obtain fee simple title by adverse possession under Florida law, see Hollywood, Inc. v. Zinkil, 403 So. 2d 528, 535 (Fla. Dist. Ct. App. 1981) (citing Levering v. City of Tarpon Springs, 92 So. 2d 638, 640 (Fla. 1957); see also Kelley v. City of Cocoa, 188 So. 2d 862, 864 (Fla. Dist. Ct. App. 1966)) (stating that "it is well-settled that a public entity may obtain fee simple title by adverse possession"); Seaboard Air Line R.R. v. Cal. Chem. Co., 210 So. 2d 757, 761 (Fla. Dist. Ct. App. 1968) (stating that "[a] private corporation may acquire title by adverse possession in the same manner and to the same extent as an individual"). Because it is

well-settled that public entities and private corporations can obtain fee simple title by adverse possession, there is simply no basis on which to find that, as a matter of Florida law, a railroad cannot obtain fee simple title by adverse possession.

The guidance provided by the Fifth Circuit in <u>Dunscombe</u>, the District Court of Appeal of Florida in <u>Tassapoulos</u> and the Supreme Court of Florida in <u>Seaboard</u> indicates that a railroad that meets the requirements under Florida law for acquiring fee title by adverse possession without color of title is not prevented by its status as a railroad from acquiring such title.  This conclusion is also in accord with the treatise Florida Jurisprudence, which states that "[u]nder Florida law, a railroad, having the power of eminent domain, can also acquire title by adverse possession."  2 Fla. Jur. 2d Adverse Possession § 56 (2011) (citing <u>Dunscombe</u>).

2.      Whether Tampa & Gulf Coast Obtained Fee Simple Title by Adverse Possession

The court now addresses whether Tampa & Gulf Coast met the requirements under Florida law for acquiring fee title to the segment without a recorded conveyance by adverse possession.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  <u>Adickes</u>, 398 U.S. at 157.  "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient."  <u>SRI Int'l</u>, 775 F.2d at 1116 (citing <u>Barmag</u>, 731 F.2d at 836).  When parties cross-move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  <u>Mingus Constructors</u>, 812 F.2d at 1391.

Defendant contends that "[p]laintiffs offer no evidence showing that Tampa & Gulf [Coast] did not meet the criteria for acquiring fee title by adverse possession."  Def.'s Reply 20.  Defendant further contends, with no citation to the record, that "Tampa & Gulf [Coast] met the requirements of [adverse possession] by improving the premises by building its tracks and operating trains from in or about 1914 forward."  Def.'s Supp. Brief 12.  Defendant argues that "Tampa & Gulf[ Coast's] usage is entirely consistent with the exclusive possession required to show adverse possession.  Tampa & Gulf [Coast] constructed and maintained railroad tracks and it and its successors operated trains along the rail corridor."  Def.'s Supp. Brief 12.

23

Plaintiffs contend that defendant has not proven that Tampa & Gulf Coast acquired fee title by adverse possession, and assert, with no citation to the record, that "[o]n the agreed facts, the railroad never used this land for anything except operating trains across tracks laid across this strip of land."  Pls.' Sur-Reply 7.

Plaintiffs further contend, with no citation to the record, that:

 [t]here is no evidence or allegation Tampa & Gulf [Coast] did anything more than . . . lay tracks across the land and run trains over the tracks. . . .  Tampa & Gulf [Coast] never did anything other than lay railroad tracks across the land and periodically run a train across these tracks.

There is no evidence or suggestion Tampa & Gulf [Coast] ever made any use of the land greater than that which is typical of the use made of a right-of-way easement.

Pls.' Supp. Brief 13.

The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  Adickes, 398 U.S. at 157.  Neither party has set forth sufficient evidence on the issue of adverse possession.  The parties' briefing contains factual assertions about the actions of Tampa & Gulf Coast with no citation to the record.  See Pls.' Sur-Reply 7 (stating with no citation to the record that "[o]n the agreed facts, the railroad never used this land for anything except operating trains across tracks laid across this strip of land"); Def.'s Supp. Brief 12 (stating with no citation to the record that "Tampa & Gulf [Coast] met the requirements of [adverse possession] by improving the premises by building its tracks and operating trains from in or about 1914 forward").  Because the parties have failed properly to support their motions for summary judgment, neither has shown the absence of a genuine issue of material fact, and neither is entitled to summary judgment.  See Adickes, 398 U.S. at 157; see also RCFC 56(a).  The court cannot determine at this time whether Tampa & Gulf Coast acquired fee simple title by adverse possession to the segment without a recorded conveyance.

C.     Motion for Reconsideration

At stake in plaintiffs' Motion for Reconsideration is whether Ordinance 429 informs the interpretation of the Hayward Conveyance.  Plaintiffs contend that the fact that the Hayward Conveyance was executed "seven months after the City issued [Ordinance 429] authorizing the railroad a limited right to operate a railroad informs the interpretation of what interest the Hayward deed conveyed and confirms this was only an easement."

24

Pls.' 429 Brief 1.  Defendant contends that "[t]o the extent that the Court finds that Ordinance 429 conveyed only an easement, [Tampa & Gulf Coast's] interest was later modified to a fee simple interest under the Hayward deed." Def.'s 429 Brief 2.

The position of defendant is supported by the analysis of the Federal Circuit in Hash v. United States, 403 F.3d 1308 (Fed. Cir. 2005).  In Hash, the appellants argued that the Federal Circuit's opinion in Preseault II, 100 F.3d 1525, supported their position that when a railroad enters land before acquiring the right to do so, a de facto condemnation occurs, and the railroad cannot acquire more than an easement, even if the landowner subsequently executes a deed to the railroad.  Hash, 403 F.3d at 1323.  In its discussion of Preseault II, the Federal Circuit in Hash explained that in Preseault II the railroad occupied the land without a written conveyance "and later was granted a 'warranty deed' in the terms used for fee transfer." Hash, 403 F.3d at 1323.  According to the Hash court, the Federal Circuit in Preseault II, "applying Vermont law, held that in view of the unauthorized origin of the railroad's entry upon the Preseault's land, the railroad acquired no more than what it needed--an easement for the right-of-way." Id.  After discussing the court's decision in Preseault II, the Federal Circuit in Hash nevertheless agreed with the district court's decision not to treat the deeds differently because the railroad entered the land before acquiring the right to do so, "for there was no evidence of any greater inequality between the buyer and seller than for the other deeds." Id.  Plaintiffs do not contend that Janet M. Hayward and H.E. Hayward possessed less bargaining power than Tampa & Gulf Coast.  See Pls.' Mem. passim; Pls.' Resp. passim; Pls.' Sur-Reply passim; Pls.' Supp. Brief passim; Pls.' Mot. Recons. passim; Pls.' Reply Recons. passim; Pls.' 429 Brief passim; Pls.' 429 Reply passim.  In the absence of evidence of unequal bargaining power, cf. Hash, the court sees no reason to allow Ordinance 429 to "inform[] the interpretation of what interest the Hayward deed conveyed," as plaintiffs contend, Pls.' 429 Brief 1.  Accordingly, the court will not reconsider its interpretation of the Hayward Conveyance.

Additionally, as discussed in Part II, plaintiffs move the court to reconsider its dismissal of five of plaintiffs claims "because the undisputed facts do not support a conclusion that the segment of railway line abutting their land was originally established by one of the Four Conveyances." Pls.' Mot. Recons. 1.  Plaintiffs have changed their position regarding which conveyance corresponds to each plaintiff's property.  See Op. and Order of June 7, 2011, passim; see also supra Part II.D.  Initially, plaintiffs asserted that Bama Sea Products, Inc., Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family Partnership Ltd. are the successors-in-interest to Janet M. Hayward and H.E. Hayward.  Pls.' Mem. 6; PFUF I ¶¶ 52, 96, 100, 104.  Plaintiffs now contend that Ordinance 429 is also relevant to the claims of Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family

25

Partnership Ltd, Pls.' 429 Brief 1, and that no written conveyance is relevant to the claim of Bama Sea Products, Inc., Pls.' Mot. Recons. 2.  In response to plaintiffs' Motion for Reconsideration, the court requested the parties to "[i]dentify with specificity each and every conveyance and each and every other item of evidence relevant to the claim of each plaintiff (including each plaintiff whose claim has been dismissed).  Order of June 24, 2011, Dkt. No. 84, at 1.  In their second joint stipulation, the parties jointly produced the following chart documenting each and every conveyance and each and every other item of evidence relevant to the claim of each plaintiff:

| PLAINTIFF[] | CONVEYANCE TO TAMPA & GULF |
| --- | --- |
| 1.  Jesse and Virginia T. Abrams | No written conveyance identified by the parties |
| 2. Lawrence C. Alton | Ordinance No. 429 |
| 3. Bama Sea Products, Inc. | No written conveyance identified by the parties |
| 4. Connie and James Howard Batton | Pancoast deed |
| 5. Billie James and Laura E. Donald | Hayward deed |
| 6. Vito Farese | Pancoast deed |
| 7. Ronald Hendriex | Pancoast deed |
| 8. Johnston Property, LLC | Gilbart deed |
| 9. LaBar Enterprises | Gilbart deed |
| 10. Peter Denne Property Holdings, Inc. | Ordinance No. 429 and Hayward deed |
| 11. Joel M. Samon and Jared M. Samon | Ordinance No. 429 and Hayward deed |
| 12. SBJ Resch Family Partnership, Ltd. | Ordinance No. 429 and Hayward deed |
| 13. Whispell[] Foreign Car[s], Inc. | Ainsworth deed |

Stipulation II 3 (emphases omitted).[16]

Because the parties have agreed that the Hayward Conveyance covers three properties that are also covered by Ordinance 429, see Stipulation II 3, 5-6, and because the Hayward Conveyance conveyed fee simple title to Tampa & Gulf Coast, Order and Op. of Feb. 7, 2011 19, plaintiffs' Motion for Reconsideration as to the claims of Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family Partnership Ltd. is MOOT.  As discussed above, see supra note 8, plaintiffs' Motion for Reconsideration as to the claim of Connie and James Howard Batton is MOOT.

In light of the parties' stipulation that no written conveyance is relevant to the claim of Bama Sea Products, Inc., Stipulation II 3, plaintiffs' Motion for Reconsideration as to the claim of Bama Sea Products, Inc. is GRANTED.  The court will address the claim of Bama Sea Products, Inc. in further proceedings addressing adverse possession, as contemplated by Part IV.B.

In its February opinion, the court dismissed the claim of LaBar Enterprises based on its interpretation of the Ainsworth Conveyance.  Order and Op. of Feb. 7, 2011 31-32. The parties have since stipulated that the Gilbart Conveyance, rather than the Ainsworth Conveyance, is relevant to the claim of LaBar Enterprises.  Stipulation II 3.  Because the court determined that the Gilbart Conveyance conveyed fee simple title to Tampa & Gulf Coast, Order and Op. of Feb. 7, 2011 23, the Order and Opinion of February 7, 2011, Dkt. No. 67, is hereby AMENDED to provide that the claim of LaBar Enterprises is DISMISSED based on the Gilbart Conveyance, rather than the Ainsworth Conveyance.

V.   Conclusion

In accordance with the foregoing, the court DENIES Plaintiffs' Motion for Partial Summary Judgment with respect to the claims of Bama Sea Products, Inc., Jesse and Virginia T. Abrams, Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family Partnership, Ltd, and the court GRANTS Plaintiffs' Motion for Partial Summary Judgment with respect to the claim of Lawrence C. Alton.  The court DENIES Defendant's Motion for Partial Summary Judgment with respect to the claims of Lawrence C. Alton, Bama Sea Products, Inc., and Jesse and Virginia T. Abrams, and the court GRANTS Defendant's Motion for Partial Summary Judgment with respect to the

---

[16]The parties have stipulated that the Dann Gerow and Johnstone conveyances are not relevant in determining the interest that Tampa & Gulf Coast and/or its successors acquired in the subject railroad right of way.  Stipulation II 6.

claims of Peter Denne Property Holdings, Inc., Joel M. Samon and Jared M. Samon, and SBJ Resch Family Partnership, Ltd.  The court AMENDS the Order and Opinion of February 7, 2011, Dkt. No. 67, to provide that the claim of LaBar Enterprises is DISMISSED based on the Gilbart Conveyance, rather than the Ainsworth Conveyance.

The parties shall, on or before Monday, September 12, 2011, propose further proceedings necessary to resolve the claims of Lawrence C. Alton, Jesse and Virginia T. Abrams, and Bama Sea Products, Inc.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge