# In the United States Court of Federal Claims

No. 09-315L

(E-Filed: August 1, 2018)[1]

|  |  |  |
|---|---|---|
| WHISPELL FOREIGN CARS, INC., et al., | ) ) ) | Attorneys' Fees; RCFC 54(d); |
| Plaintiffs, | ) ) | Uniform Relocation Assistance and Real Property Acquisition |
| v. | ) ) ) | Policies Act, 42 U.S.C. § 4654 (2012). |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

Mark F. (Thor) Hearne, II, Clayton, MO, for plaintiffs. Lindsay S.C. Brinton, Meghan S. Largent, Stephen S. Davis, and Abram J. Pafford, of counsel.

Taylor Ferrell, Trial Attorney, with whom was Jeffrey H. Wood, Acting Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, J.

  Before the court is plaintiffs' motion for attorneys' fees and litigation costs, pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA), 42 U.S.C. § 4654(c) (2012) and Rule 54(d)(2) of the Rules of the United States Court of Federal Claims (RCFC). See ECF No. 229. Plaintiffs seek attorneys' fees and costs following the settlement, in their favor, of certain takings claims related to

---

[1] This opinion was issued under seal on July 18, 2018. The parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

property in Pinellas, Florida.  See ECF No. 13-1 (second amended complaint).
Defendant filed, by leave of court, a corrected response brief and supporting exhibits in
response to plaintiffs' motion, as three separate docket entries,  ECF No. 251
(defendant's corrected response); ECF No. 248 (corrected exhibit 1, filed under seal);
ECF No. 275 (exhibits 2 through 4).  And plaintiffs filed a reply brief, ECF No. 262.
Following its review of the parties' submissions, the court directed the parties to file
supplemental briefs.  See ECF No. 274 (January 30, 2018 order).

Thereafter, plaintiffs erroneously filed their supplemental brief as a supplemental
motion for attorneys' fees, ECF No. 278, and defendant filed its supplemental brief as a
response thereto, ECF No. 279.[2]  Plaintiffs then filed a sur-reply in support of their
supplemental brief.  See ECF No. 280.  And finally, defendant filed a sur-reply brief.  See
ECF No. 281.  Additionally, during the course of the briefing schedule, plaintiffs filed
three notices of additional authority relating to plaintiffs' motion for attorneys' fees.  See
ECF No. 235 (first notice); ECF No. 271 (second notice); ECF No. 282 (third notice).
Defendant filed a notice of supplemental authority, see ECF No. 283, and plaintiffs filed
a response, see ECF No. 284.  Plaintiffs' motion is fully briefed and ripe for ruling by the
court, without oral argument.  For the reasons set forth below, plaintiffs' motion for
attorneys' fees and litigation costs is **GRANTED, in part** and **DENIED, in part**.

I.      Background

In May 2009, plaintiffs filed this rails-to-trails lawsuit as a putative class action,
alleging that defendant violated their rights—and the rights of those similarly situated—
as guaranteed by the Fifth Amendment to the Constitution of the United States, by taking
property without providing just compensation in return.  See ECF No. 1.  Plaintiffs filed
two amended complaints, which eliminated the class action, but joined a number of
plaintiffs.  See ECF Nos. 11 (order granting motion for leave to file and accepting first
amended complaint, as filed); 10-1 (first amended complaint); and, ECF Nos. 14 (order
granting motion for leave to file second amended complaint); 13-1 (second amended
complaint).  On summary judgment, the court dismissed the claims in the second
amended complaint made by all but three of those plaintiffs.  See ECF No. 67 (February
7, 2011 opinion); ECF No. 82 (June 7, 2011 opinion on reconsideration).

---

[2]      Plaintiffs' counsel filed plaintiffs' supplemental brief as a supplemental motion,
see ECF No. 278, whereas it should have been filed as a supplemental brief per the
court's January 30, 2018 order, see ECF No. 274.  Since plaintiffs' brief was filed as a
motion, it is now a pending motion on the docket in this matter.  The clerk's office is
directed to **TERMINATE** this motion and edit the docket entry, ECF No. 278, to
properly reflect that this filing is plaintiffs' supplemental brief, not a motion.

2

The parties then filed cross-motions for summary judgment on the remaining claims.  See ECF Nos. 105, 112 (defendant's motions for summary judgment); ECF No. 116 (plaintiffs' cross-motion for summary judgment).  The court ruled that defendant was liable for the claims made by one plaintiff, see ECF No. 154 (June 5, 2012 opinion determining that defendant was liable for the claim made by Mr. Lawrence C. Alton), but did not resolve liability on summary judgment as to the others, see ECF No. 164 (August 30, 2012 opinion denying motion for summary judgment as to liability for claims made by the Abrams Family and Bama Sea Products, Inc.).  On September 13, 2013, the parties informed the court that they had reached a negotiated settlement of the pending claims, for an amount of $130,000, plus interest.  See ECF No. 188 (joint status report).  Since that time, the parties have been litigating the attorneys' fees award, though the case was stayed for a period of approximately twenty months, to await a potentially relevant decision expected from the United States Court of Appeals for the Federal Circuit.  See ECF No. 218 (order granting stay); ECF No. 219 (order lifting stay).

When this litigation began, plaintiffs' counsel worked in the St. Louis, Missouri office of Lathrop and Gage, a Missouri law firm that also maintained an office in Washington, D.C.  See ECF No. 229-3 at 2 (Decl. of Mark F. (Thor) Hearne, II).  After the initial stage of litigation was underway, in February 2010, plaintiffs' counsel joined Arent Fox, a Washington, D.C.-based law firm with an office in St. Louis, Missouri.  See id.  The parties disagree as to whether Washington, D.C. market rates or St. Louis market rates should be used in the court's fees calculation.

Plaintiffs filed the motion that is presently before the court on October 11, 2016.  See ECF No. 229.  In their motion, plaintiffs ask the court to award $998,402 in attorneys' fees and $10,860 in litigation costs.  See ECF No. 229-1 at 33.  That figure has now grown to $1,118,299 in fees, and $14,362 in costs, during the course of litigating the issue of attorneys' fees.  See ECF No. 262 at 8.  Plaintiffs allege that their request, based on Washington, D.C. market rates, or the equivalent thereof, is a "fair, just and reasonable amount," and should not be adjusted.  See ECF No. 229-1 at 12.

In support of this assertion and the fees requested, plaintiffs initially submitted: (1) billing entries from the law firms Lathrop Gage and Arent Fox, LLP, see ECF No. 229-2; (2) the declaration of plaintiffs' lead counsel, Mark F. (Thor) Hearne, II, see ECF No. 229-3; (3) the declaration of Elizabeth Munno, chief financial officer, Arent Fox, LLP, see ECF No. 229-4; (4) the declaration of Dr. Michael Kavanaugh, an economist, see ECF No. 229-5; (5) the declaration of Dr. Laura A. Malowane, an economist, made in connection with Biery v. United States, Consolidated Case Nos. 07-693L and 07-675L, ECF No. 229-6; (6) the supplemental declaration of Dr. Malowane, made in connection with Biery v. United States, Consolidated Case Nos. 07-693L and 07-675L, ECF No.

229-7; (7) two surveys of attorney billing rates, ECF No. 229-8; (8) a portion of a hearing transcript from Biery v. United States, Consolidated Case Nos. 07-693L and 07-675L, ECF No. 229-9; and (9) a memorandum and order filed in the United States District Court for the Eastern District of Virginia in Vienna Metro, LLC v. Pulte Home Corporation, Case No. 1:10-cv-00502 (2011), ECF No. 229-10.

In response, defendant argues that the court should reduce plaintiffs' request on three bases:  (1) plaintiffs' success in the case was "minimal," since only three of the original fourteen plaintiffs recovered, ECF No. 251 at 19; (2) a portion of the fees charged were "unreasonable" in violation of the URA, such as fees charged for administrative tasks, id. at 27; and (3) "plaintiffs' requested rates of compensation are excessive," id. at 32.  Defendant's corrected response, ECF No. 251, was supported by an exhibit filed under seal, see ECF No. 248, which addressed the specific billing entries submitted by plaintiffs.  But defendant's corrected response did not include the documents referred to therein as Exhibits 2, 3, and 4.[3]

Along with their reply to defendant's opposition, ECF No. 262, plaintiffs submitted:  (1) billing entries for additional fees and expenses, ECF No. 262-1; (2) a hearing transcript from Campbell v. United States, Case No. 13-324L, ECF No. 262-2; (3) a summary of defendant's time and expenses, ECF No. 262-3; (4) a supplemental declaration from Mr. Hearne, plaintiffs' counsel, ECF No. 262-4; (5) a table comparing the government's proposed St. Louis rates and Washington, D.C. rates, ECF No. 262-5; (6) the declaration of Catherine L. Hanaway, a partner at Husch Blackwell, a law firm in St. Louis, ECF No. 262-6; (7) a table comparing the government's proposed rates in other cases, ECF No. 262-7; (8) DOJ's locality pay table, ECF No. 262-8; (9) the declaration of Hugh Culverhouse, an attorney in Florida, originally filed in a different case, ECF No. 262-9; (10) a table comparing Washington, D.C. market rates with rates calculated according to the Laffey matrix, ECF No. 262-10; and (11) the U.S. Attorney's fees matrix from 2015-2017, ECF No. 262-11.

After reviewing the parties' initial submissions relating to plaintiffs' motion for attorneys' fees and costs, the court found that "neither plaintiffs nor defendant ha[d]

---

[3]     This paragraph refers to arguments made in, and exhibits filed with, defendant's corrected response to plaintiffs' motion for attorneys' fees, ECF No. 251.  Defendant moved the court for leave to file a corrected response, see ECF No. 249, a motion the court granted, see ECF No. 250.  In filing its corrected response, several exhibits were omitted.  The court addressed this filing error in its order of January 30, 2018, within which it directed defendant to file the government's exhibits 2, 3, and 4 as a separate docket entry in this matter.  See ECF No. 274 (scheduling order); ECF No. 275 (notice of filing of exhibits 2, 3, and 4).

provided the court with sufficient evidence to resolve the issue" of whether Washington, D.C. or St. Louis rates apply and directed the parties to file supplemental briefs.  <u>See</u> ECF No. 274 at 1 (scheduling order).  Specifically, the parties failed to submit evidence to establish the prevailing rates in either market in order to allow the court to make a comparison of those rates.   As the court explained:

> Plaintiffs have offered no numbers that purport to represent relevant St. Louis market rates, much less the actual St. Louis rates charged by either of the firms at issue.  The only evidence in the record from plaintiffs that provides any basis for comparison between the two markets is a statement in the declaration made by Ms. Elizabeth Munno, the Chief Financial Officer for Arent Fox. She states that the firm charges a rate "approximately fifteen percent lower for an associate in St. Louis compared to a similarly experienced associate in Los Angeles, New York or Washington, D.C."  <u>See</u> Decl. of Ms. Elizabeth Munno, ECF No. 229-4 at 3.  Ms. Munno makes no representations about comparable partner compensation, and she provides no basis for concluding that the fifteen percent differential that she cites is specifically applicable to the type of legal work involved with this case.  Furthermore, even assuming that Arent Fox's St. Louis billing rates are fifteen percent lower than the rates sought in this case, plaintiffs have provided no evidence of whether that rate is representative of the St. Louis market.

<u>Id.</u> at 2.  The court also noted in its order that while defendant had apparently attempted to file relevant data on St. Louis market rates with its original response brief, ECF No. 244 (see exhibits thereto), its corrected response brief, ECF No. 251, omitted these exhibits.

Since the time of the court's ruling, both parties have made additional submissions.  First, defendant corrected its omission of exhibits 2 through 4 to its corrected response brief, ECF No. 251, to include the following exhibits:  (1) a 2014 opinion issued in <u>Adkins v. United States</u>, Case Nos. 09-503L, 09-241L, & 09-158L, ECF No. 275-1; (2) a series of surveys of St. Louis, Missouri attorney billing rates published in <u>Missouri Lawyers Weekly</u>, in August 2017, September 2016, September 2015, June 2014, June 2013, August 2012, March 2011, March 2010, and March 2009, <u>see</u> ECF No. 275-2; and (3) biographies of the plaintiffs' attorneys, <u>see</u> ECF No. 275-3.

Plaintiffs then filed their supplemental brief, ECF No. 278, including three additional declarations:  (1) a supplemental declaration of Mr. Hearne, plaintiffs' counsel, ECF No. 278-1; (2) the declaration of Stephen S. Davis, an attorney with Arent Fox

practicing in St. Louis, Missouri, ECF No. 278-2; and (3) the declaration of Aaron Williams, a Certified Personnel Consultant in Missouri, ECF No. 278-3.

## II.     Legal Standards

As a general rule, plaintiffs may not recover attorneys' fees from the United States. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983).  In this case, however, plaintiffs are eligible to request attorneys' fees and costs pursuant to the URA, which creates an exception to the general rule, and provides, in relevant part:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency . . . shall determine and award or allow to such plaintiff, as a part of such judgment . . . such sum as will in the opinion of the court  .  .  .  reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c).  "In determining the amount of reasonable attorneys' fees under federal fee-shifting statutes, the Supreme Court has consistently upheld the lodestar calculation as the 'guiding light of [its] fee-shifting jurisprudence.'"  Bywaters v. United States, 670 F.3d 1221, 1228-29 (Fed. Cir. 2012) (alteration in original) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010)).  In making the lodestar calculation, the court multiplies the number of hours reasonably expended in the litigation by a reasonable hourly rate.  Id. at 1225-26.  Plaintiffs "bear[ ] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

This formula is deceptively simple.  In order to perform the proper calculation, the court must first review the hours billed and determine whether the work is properly charged to the client.  Administrative tasks, for instance, are not compensable.  See Hopi Tribe v. United States, 55 Fed. Cl. 81, 100 (2002).  The court then must decide whether plaintiffs have applied the appropriate hourly rate, which is set "according to the prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895 (1984).

In order to identify the relevant community, the Federal Circuit applies the forum rule.  See Avera v. Sec'y of Dept. of Health and Human Servs., 515 F.3d 1343, 1348-49 (Fed. Cir. 2008).  Under the forum rule, the relevant community is defined by the geographic location of the trial court.  See Bywaters, 670 F.3d at 1233 (citing Avera, 515

F.3d at 1348).  The forum for cases before the United States Court of Federal Claims is Washington, D.C.  See Avera, 515 F.3d at 1348; Biery v. United States, Nos. 07-693L & 07-675L, 2012 WL 5914260, at *6 (Fed. Cl. Nov. 27, 2012).

The court may, however, apply an exception to the forum rule when "the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a very significant difference in compensation favoring D.C."  Avera, 515 F.3d at 1349 (quoting Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 755, 758 (D.C. Cir. 1999) (per curiam) (emphasis in original).  In recognizing this so-called Davis County exception to the forum rule, the Federal Circuit intended to prevent a windfall to attorneys and "prevent the occasional erratic result where the successful petitioner is vastly overcompensated."  See id. (quoting Davis Cty., 169 F.3d at 758).  The Federal Circuit has applied the Davis County exception in the context of compensation sought pursuant to the URA.  See Bywaters, 670 F.3d at 1224, 1232-34.

III.    Analysis

A.    Compensable Hours

Defendant contends that plaintiffs' requested fee award should be reduced for several reasons.  First, defendant argues that plaintiffs achieved minimal success, and therefore, should not recover the full amount of fees requested.  See ECF No. 251 at 19-26.  In addition, defendant argues that plaintiffs' request includes fees in four non-compensable categories of work:  (1) work related to the solicitation of prospective clients; (2) administrative work; (3) vague and unexplained timesheet entries; and (4) excessive hours, specifically those dedicated to briefing the request for attorneys' fees.  See ECF No. 251 at 27-32.  The court will address each issue in turn.

1.    Reductions to Plaintiffs' Award Due to the Level of Success

Defendant divides this case into four procedural phases and argues that after determining the level of success in each phase, the court should reduce any fee recovery for the unsuccessful portion of the plaintiffs' efforts.  See ECF No. 251 at 19-26.  As an initial matter, plaintiffs' object to the structure of defendant's argument, claiming that dividing the case into "discrete phases" violates Supreme Court precedent.  ECF No. 262 at 10.  Plaintiffs do not cite any authority for this assertion, but it appears that they intend to refer to the Court's opinion in Hensley v. Eckerhart, 461 U.S. 424, 435 (1983), in which the Court observed:

In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time

> will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the [trial] court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

In the court's view, the analytical framework suggested by defendant does not violate this guidance. Defendant's division of the case into time periods simply provides the court with a way to structure a discussion of whether plaintiffs' counsel should be compensated for unsuccessful portions of the case. It does not divide the suit itself into discrete claims. Rather, the approach proposed by defendant has been employed previously and effectively by this court. See Gregory v. United States, 110 Fed. Cl. 400, 404 (2013) (dividing the case into five time periods for the purpose of analyzing appropriate reductions to hours billed).

It is indisputable that plaintiffs achieved less than they set out to achieve when this lawsuit began. Following dismissal of most of the claims on summary judgment, see ECF No. 67, only three of fourteen plaintiffs ultimately recovered, see ECF No. 188 (joint status report).[4]   That said, it does not automatically follow that plaintiffs' fee request should be reduced in direct proportion to that measure of success. As this court has previously noted, rails-to-trails cases involve both uniquely interrelated claims, and serve the special purpose of "vindicating constitutionally protected property rights." Gregory, 110 Fed. Cl. at 404 (quoting Bywaters, 684 F.3d at 1296). With these concepts in mind, the court reduces the requested fee award as detailed below.

a.   First Litigation Period:  April 2009 to March 2010

Plaintiffs filed their original complaint on May 18, 2009. See ECF No. 1. Plaintiffs' counsel has submitted billing records beginning in April 2009, reflecting work done in advance of that initial filing. See ECF No. 230 at 2. Plaintiffs' first amended complaint was filed by leave of court on October 28, 2009, see ECF No. 10 (amended complaint); ECF No. 11 (order granting motion for leave to file and accepting first amended complaint, as filed), and a second amended complaint was filed by leave of the court on December 14, 2009, see ECF No. 13 (second amended complaint); ECF No. 14 (order granting motion for leave to file and accepting second amended complaint, as

---

[4]   Defendant contends that there were sixteen plaintiffs in this case, but states that for purposes of this motion, it adopts plaintiffs' position that there were fourteen. See ECF No. 251 at 9 n.3. The court will likewise conform its discussion to the parties' accounting, as it has no material impact on the outcome in these circumstances.

filed).  During this time, the parties also exchanged initial disclosures.  See ECF No. 251 at 9.

Defendant contends that "[d]uring this period, more than 80 percent of Counsels' work was dedicated to the pursuit of non-meritorious claims (i.e.[,] claims that were ultimately dismissed) and/or on the solicitation of additional clients."  ECF No. 251 at 22-23.  Defendant concedes, however, that "at least some of the work on behalf of the unsuccessful Plaintiffs can be traceable to the later success of the three settling Plaintiffs."  Id. at 23.  In defendant's estimation, a fifty percent reduction in the fee request is appropriate for this time period.  Id.  Plaintiffs offer no specific refutation of defendant's position.  See generally ECF No. 262.

Taking all of the available facts and argument together, the court concludes as follows.  Particularly in the beginning stage of a case, attorneys must devote considerable time both to the development and presentation of the legal theory underlying a claim, and to the gathering of facts that are material to that claim.  Here, the initial development and presentation of plaintiffs' legal theories represent an aspect of this litigation in which the plaintiffs' claims are most interconnected.  The claims of various plaintiffs, however, more clearly diverge with regard to fact gathering.  In order to give plaintiffs' counsel full credit for the legal work, and partial credit for the fact-gathering work on successful claims, the court, in its discretion, hereby reduces by thirty percent the number of hours billed for each timekeeper during this period.

b.      Second Litigation Period:  March 2010 to September 2011

During the second period of time delineated by defendant, the parties litigated cross-motions for summary judgment, which addressed all claims made in this case, and a subsequent motion for reconsideration.  See ECF No. 29 (plaintiffs' motion for partial summary judgment); ECF No. 38 (defendant's cross-motion for summary judgment); ECF No. 67 (February 7, 2011 opinion granting in-part and denying in-part the parties' motions for summary judgment); ECF No. 69 (defendant's motion for reconsideration); ECF No. 99 (August 29, 2011 opinion granting in-part and denying in-part defendant's motion for reconsideration).  The end result of the motion practice during this period was that the court dismissed the claims of all but three plaintiffs on summary judgment.  ECF No. 99 at 27-28.

Given plaintiffs' marginal rate of success during this period of time, a significant reduction is appropriate.  In the court's view, however, the eighty percent reduction requested by defendant is excessive.  It is true that plaintiffs had approximately a twenty percent success rate if that rate is calculated based on the number of plaintiffs whose

claims survived the motions for summary judgment.  But, this calculation fails to account for legal work from which both the successful and unsuccessful plaintiffs benefitted.  In order to appropriately credit plaintiffs' counsel for work that commonly applied to all plaintiffs' claims, the court, in its discretion, hereby reduces by fifty percent the number of hours billed for each timekeeper during this period.

> c.  Third Litigation Period:  September 2011 to August 2013

The third time period encompasses the parties' efforts to assess and settle the claims made by the ultimately successful plaintiffs.  As such, defendant seeks no reduction in fees for lack of success, and the court will not impose a reduction of its own accord.

> d.  Fourth Litigation Period:   September 2013 to the Present

The final time period involves plaintiffs' efforts to recover attorneys' fees. Defendant's argument for reducing fees billed as part of this effort primarily rests on the assertion that plaintiffs' counsel should not recover for making arguments contrary to opinions previously issued by the Federal Circuit.  Specifically, defendant argues that plaintiffs should not recover for hours billed to an unsuccessful motion to compel in addition to their motion seeking attorneys' fees,[5] or for hours billed for developing arguments for the recovery of attorneys' fees that previously have been rejected by the Federal Circuit.  See ECF No. 251 at 25-26.  The court hereby declines to reduce the requested fees during the fourth time period on the basis that plaintiffs' efforts were not entirely successful, but will revisit the issue of whether the total hours are excessive below.

> 2.  Additional Reductions for Non-Compensable Categories of Work

In addition to the above reductions on the basis of plaintiffs' level of success, the court finds that the following reductions for non-compensable categories of work are appropriate.

---

[5]     Defendant states that plaintiffs filed two unsuccessful motions to compel, but the court docket only reflects one motion to compel in this case, ECF No. 226 (plaintiffs' motion to compel); ECF No. 239 (opinion denying motion to compel).

a.   Plaintiffs May Not Recover for Work Related to Soliciting Clients

One of the cardinal rules in seeking an award of attorneys' fees under a fee-shifting statute is that "[h]ours that are not properly billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to statutory authority." <u>Hensley</u>, 461 U.S. at 434 (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original). Defendant argues that plaintiffs' attempt to recover "for work in soliciting clients, rather than performing work on behalf of a retained client," violates this rule. ECF No. 251 at 27. The court agrees. Plaintiffs may not recover fees for hours billed for business development as opposed to client representation. Upon review of the entries designated as client development entries in Exhibit 1 to defendant's response, <u>see</u> ECF No. 248, the court finds that a reduction is warranted, but disagrees on the designation as to a small number of entries. Accordingly, the court hereby disallows plaintiffs' request for reimbursement of time spent soliciting clients as requested by defendant, with the exception of fifteen hours billed for Mr. Hearne, plaintiffs' counsel.

b.   Plaintiffs May Not Recover for Administrative Work

Defendant argues that plaintiffs "seek reimbursement for 76 hours of administrative or secretarial work that is not recoverable under the URA." ECF No. 251 at 29. Defendant is correct that plaintiffs cannot recover fees for tasks properly categorized as administrative. <u>See</u> <u>Hopi Tribe</u>, 55 Fed. Cl. at 100. Upon review of the time entries in Exhibit 1 to defendant's response, <u>see</u> ECF No. 248, the court agrees with most of defendant's designations of administrative work, and will reduce the compensable hours accordingly. The court hereby disallows the hours as requested by defendant, with the exception of two hours billed for David Yearwood, and 3.2 hours billed for Alexandrea Barney.

c.   Plaintiffs' Request Must Be Discounted for Vague Time Entries

Defendant objects to plaintiffs' request for fees related to two specific attorneys on the basis that their billing entries are too vague to allow the court to determine whether the work performed was reasonable. First, defendant argues that the billing entries recorded by Joseph Cavinato, prior to November 2011, lack the requisite specificity for reimbursement. <u>See</u> ECF No. 251 at 28-29 & n.14 (stating that defendant "does not contest the sufficiency of Mr. Cavinato's billing descriptions after November 2011"). Additionally, defendant contends that the billing entries recorded by Debra Albin-Riley suffer from the same deficiency. <u>See</u> <u>id.</u> at 28-29. Specifically, defendant asks the court

11

to reduce the fees requested for hours billed for Mr. Cavinato by twenty-five percent, and for hours billed for Ms. Albin-Riley by fifty percent.

Defendant is correct that the court has the discretion to reduce hours billed on the basis of vague time entries.  See Biery v. United States, Case Nos. 07-693L and 07-675L, 2014 WL 12540517, at *3 (Fed. Cl. Jan. 24, 2014) (reducing fee award for hours billed by the same two attorneys at issue in this case by fifty percent due to vague billing entries).  See also Avogoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011) (affirming deduction of hours for entries that simply stated "draft client correspondence" as too vague); Greenhill v. United States, 96 Fed. Cl. 771, 781 (2011) (deducting hours associated with vague time entries).  Upon review of the entries designated as vague in Exhibit 1 to defendant's response, see ECF No. 248, the court finds that a reduction is warranted, but also finds that defendant overstates the problem.  Accordingly, the court hereby reduces the hours billed for Mr. Cavinato, prior to November 2011, by ten percent, rather than the twenty-five percent requested by defendant.  In addition, the court reduces the hours billed for Ms. Albin-Riley by twenty-five percent, rather than the fifty percent requested by defendant.

> d.  Plaintiffs' Request Must Be Discounted for Excessive Work Related to Attorneys' Fees

Finally, defendant argues that plaintiffs' total hours are excessive, particularly with regard to their effort to recover attorneys' fees.  See ECF No. 251 at 30-32.  Defendant totals plaintiffs' fee request related to time spent preparing their RCFC 54(d) attorneys' fees motion at approximately $150,000.  See id.  Since that time, plaintiffs have revised their request to include an additional $120,000 in fees.  See ECF No. 262-1.  These additional fees were evidently also incurred in the pursuit of a fee recovery, as the present motion for attorneys' fees was the only issue pending in this litigation during that time period.  Plaintiffs' total fee request is $1,118,299.  See ECF No. 262 at 8.  In other words, nearly twenty-five percent of the work for which plaintiffs seek reimbursement was work done on the fee petition.  And plaintiffs' recovery of fees for work preparing the fee petition, at $270,000, would be more than twice the $130,000 that plaintiffs recovered in this matter.

This court has recognized that "courts will typically award some fees for work necessary to prepare a fee petition."  Biery, 2014 WL 12540517, at *4 (citing Gregory, 110 Fed. Cl. at 406 (finding that 10.3 hours billed for preparing a fee petition was reasonable)).  In Biery, the court concluded that eighty hours, as opposed to the 700 hours requested by plaintiffs, was reasonable, compensable time for so-called "fees on fees" work.  Id. (allowing plaintiffs to recover for twenty hours of paralegal time, thirty hours

12

of associate time, and thirty hours of partner time).  See also Campbell v. United States, No. 13-324L, 2018 WL 2253042, at *5 (Fed. Cl. May 17, 2018) (disallowing 400 of the 640 hours requested for fees-on-fees recovery, when that portion of the fee recovery would have been three times plaintiffs' recovery); Lost Tree Vill. Corp. v. United States, 135 Fed. Cl. 92, 98 (2017) (allowing reimbursement for 192.7 hours of work on fee petition in light of the unusually complex and extended nature of the litigation).

Here, plaintiffs have offered no explanation for the excessive proportion of time spent on attempting to recover fees beyond general statements, such as:  "[The] time the owners['] counsel devoted to this litigation was reasonable, appropriate and necessary." ECF No. 262 at 14.  This statement simply does not assist the court in its difficult line-drawing task.

Based on the available data, the court finds that Biery provides the best factual comparison to the case at bar for evaluating a fees-on-fees award.  Biery was a rails-to-trails case, litigated by the same plaintiffs' attorneys seeking fees in this matter.  And like the present case, Biery initially involved thirteen plaintiffs, a number of whose claims were dismissed on summary judgment.  See Biery, 2014 WL 12540517, at *1.  Campbell was also a rails-to-trails case litigated by the current team of plaintiffs' attorneys, but that case was much larger, involving claims from seventy-six plaintiffs.  See Campbell, 2018 WL 2253042, at *1.  As an additional point of comparison, the Biery litigation spanned nearly seven years, and the present case has spanned almost nine years.  Finally, the court recognizes that plaintiffs' billing entries reflect time spent attempting to settle a fee award with defendant, an issue not considered by the court in Biery.

The court in Biery allowed plaintiffs to recover for eighty hours of work on their fee petition—twenty hours of paralegal time, thirty hours of associate time, and thirty hours of partner time.  See Biery, 2014 WL 12540517, at *4.  Defendant urges the court to adopt the same measure in this instance.  See ECF No. 251 at 31-32.  While the court agrees that Biery provides a useful starting point, the longer life of this case and the work toward settlement—not addressed in Biery—justify a more generous allowance.  The court hereby concludes that 125 hours of work on plaintiffs' fee petition is reasonable in this case, divided as follows—twenty-five hours of paralegal time, sixty hours of associate time, and forty hours of partner time.

B.      Relevant Community

As noted above, in order to calculate the proper award of attorneys' fees, the court must identify "the prevailing market rates in the relevant community."  Blum, 465 U.S. at 895.  The relevant community is, as a general rule, the geographic location of the court.

13

See <u>Bywaters</u>, 670 F.3d at 1233 (citing <u>Avera</u>, 515 F.3d at 1348).  Plaintiffs contend that the court should apply this so-called forum rule, and calculate fees based on Washington, D.C. market rates.  <u>See</u> ECF No. 229-1 at 11-12; ECF No. 262 at 14-15.

Defendant argues, however, that the court should apply the exception to this rule, established in <u>Davis County Solid Waste Management & Energy Recovery Special Service District v. Environmental Protection Agency</u>, 169 F.3d 755, 758 (D.C. Cir. 1999).  <u>See</u> ECF No. 251 at 32-41.  The <u>Davis County</u> exception to the forum rule allows the court to apply lower rates "where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a <u>very significant</u> difference in compensation favoring D.C."  <u>Avera</u> 515 F.3d at 1349 (quoting <u>Davis County</u>, 169 F.3d at 758) (emphasis in original).

Thus, in order to determine whether the <u>Davis County</u> exception applies in this case, the court must determine:  (1) where the bulk of the work on this case was performed; and, (2) whether there is a very significant difference in market rates between the location from which the work was performed, and the market rates in Washington, D.C.

1.      The Bulk of the Work Was Performed in St. Louis

Plaintiffs do not contend that most of the legal work in this case was performed in Washington, D.C.  In his most recent declaration, Mr. Hearne states that Meghan Largent and Lindsay Brinton, two attorneys whose names appear most frequently in the billing records submitted by plaintiffs, live in St. Louis.  <u>See</u> ECF No. 278-1 at 2; ECF Nos. 230, 262-1 (billing records for plaintiffs).  He also represents that he has offices in both St. Louis and Washington, D.C., and performs some work from Arent Fox's offices in Los Angeles, San Francisco, and New York.[6]  <u>See id.</u>  He does not, however, represent that any of the attorneys who have billed time to this case were located in Washington, D.C.  As such, the court finds it can reasonably infer that the bulk of the work on this case was performed in St. Louis, for purposes of applying the <u>Davis County</u> exception.

2.      There Is a Very Significant Difference between St. Louis and
        Washington, D.C. Market Rates

Plaintiffs have submitted hundreds—if not thousands—of pages of argument, declarations, and billing statements in support of their fees request.  <u>See</u> ECF Nos. 229, 229-1, 229-2, 229-3, 229-4, 229-5, 229-6, 229-7, 229-8, 229-9, 229-10 (plaintiffs' motion

---

[6]      The court also notes that Mr. Hearne's official address as reflected in court records is in Clayton, Missouri.  <u>See</u> CM/ECF Docket, Case No. 09-315L.

for attorneys' fees and exhibits); ECF No. 230 (sealed Exhibit 1 to motion for attorneys' fees); ECF No. 235 (plaintiffs' notice of filing additional authority); ECF Nos. 262, 262-1, 262-2, 262-3, 262-4, 262-5, 262-6, 262-7, 262-8, 262-9, 262-10, 262-11 (plaintiffs' reply in support of motion for attorneys' fees and exhibits); ECF No. 272 (plaintiffs' second notice of supplemental authority); ECF No. 278 (plaintiffs' supplemental motion for attorneys' fees); ECF No. 280 (plaintiffs' sur-reply in support of their supplemental motion for attorneys' fees); ECF No. 282 (plaintiffs' third notice of supplemental authority); and ECF No. 284 (plaintiffs' response to defendant's notice of filing supplemental authority).  A relatively small portion of these voluminous submissions, however, speaks directly to the hourly billing rates requested by plaintiffs.

The billing records themselves, attached as Exhibit 1 to plaintiffs' motion for attorneys' fees, include an amount to be billed for each associated entry, but do not include a list identifying the rate applied to the time billed by each attorney or other professional.  See ECF No. 230.  Such a list does not appear until the final page of attachments to the declaration of Dr. Michael Kavanaugh.  See ECF No. 229-5.  The table included with Dr. Kavanaugh's declaration reveals the rates, based on the Washington, D.C. market, which plaintiffs seek to recover.  The relevant portion is reproduced below.

| Timekeeper | Years from law school | Market rate 2016-2017 $/hr. | LSI-Laffey rate 2016-2017 $/hr |
|---|---|---|---|
| Albin-Riley | 20+ | 855 | 826 |
| Bledsoe | 20+ | 800 | 826 |
| Hearne | 20+ | 819 | 826 |
| O'Brien | 20+ | 800 | 826 |
| Waller | 20+ | 615 | 826 |
| Bayles | 18 | 655 | 685 |
| Davis | 17 | 490 | 685 |
| Largent | 11 | 550 | 685 |
| Haskins | 11 | 660 | 685 |
| Brinton | 10 | 550 | 608 |
| Makin | 9 | 615 | 608 |
| Cavinato | 8 | 480 | 608 |
| Canterbury | 6 | 420 | 421 |

See id. at 55.  As noted above, the work for this case was done from two different law firms.  Plaintiffs argue that the adjusted rates, calculated according to the updated Laffey matrix, should apply to work done at Lathrop and Gage, and that the Washington, D.C.

market rate should apply to work done at Arent Fox.[7]  See ECF No. 229-1 at 11.
Although an updated chart was not filed, it appears that plaintiffs have increased these
rates in the supplemental billing entries filed with its reply brief.  See, e.g., ECF No. 262-
1 at 6 (reflecting an hourly billing rate of $859 for Mr. Hearne); ECF No. 262-1 at 7
(reflecting an hourly billing rate of $580 for Ms. Brinton).

    In response to the court's directive to provide additional information to establish
St. Louis market rates for comparison, ECF No. 274, plaintiff filed three declarations.
See ECF No. 278.  The first, from plaintiffs' counsel, Mr. Hearne, adds no new facts in
support of plaintiffs' fee petition.  The only statement included in the declaration that
comments substantively on the issues before the court is Mr. Hearne's contention that
"the government's proposed rate structure for 'St. Louis rates' bears absolutely no
relation to the actual market for legal services in St. Louis or Washington DC."  ECF No.
278-1 at 6.  Likewise, a declaration from Stephen S. Davis, an attorney with Arent Fox,
provides little assistance to the court.  After summarizing his professional experience,
Mr. Davis states:

> The "St. Louis" hourly rates proposed by the government for federal
> litigation in the Eastern District of Missouri are much lower than the hourly
> rates a St. Louis-based law firm with resources similar to Arent Fox would
> charge for work by attorneys with complex federal litigation experience, such
> as that possessed by the attorneys in this litigation.

ECF No. 278-2 at 2-3.  While the court does not have any reason to view either Mr.
Hearne's or Mr. Davis's statement as disingenuous, neither declaration affirmatively
establishes what plaintiffs' believe are reasonable St. Louis billing rates.

    The third declaration, from Aaron Williams, C.P.C., "a nationwide attorney search
and legal management consultant," does provide the court with some actual numbers.  He
includes the following chart to illustrate his opinion of appropriate St. Louis billable hour
rates:

---

[7]    The Laffey matrix is a schedule of hourly rates for legal services in the
Washington, D.C. area originally established in Laffey v. Northwest Airlines, 572 F.
Supp. 354, 371 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, Laffey v. Nw.
Airlines, 746 F.2d 4 (D.C. Cir. 1984), overruled in part on other grounds en banc, Save
Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988).  Plaintiffs
offer calculations based on an updated version of the Laffey matrix "to approximate [fees
earned by attorneys at Lathrop and Gage] for the Washington, D.C. market."  See ECF
No. 229-1 at 11.

|                        | Partner | Counsel | Associate |
|------------------------|---------|---------|-----------|
| Years of Experience    | 20+     | 10-15   | 6-8       |
| $ Range (Low-High)     | 625-675 | 425-575 | 315-465   |
| Mean                   | 645     | 482     | 387       |
| Median                 | 635     | 445     | 380       |

See ECF No. 278-3 at 1, 3.  While this information is certainly more useful than the general statements included in the first two declarations, Mr. Williams's opinion is of somewhat limited significance given the scant explanation of the methodology he used to arrive at these numbers.  Mr. Williams states that he "was asked to identify the billable hour rates for a litigation team in the leading St. Louis area law firms capable of handling complex commercial litigation, including Class Action cases, in federal court."  Id. at 1.  He sought this information directly from a number of law firms.

> Ten-to-twenty of St. Louis's largest law firms were asked to participate in this survey.  While not all participated, in my opinion, the quality and quantity of the input from those who did was sufficient to provide time-sensitive, confidential insight into the local billing rates for the most qualified St. Louis attorneys to litigate complex federal court cases.

Id. at 2.  The probative value of Mr. Williams' survey is compromised by the fact that he fails to identify the firms—or even the precise number of firms—that actually provided responsive data.  Without this information, the court has no basis on which to evaluate whether the survey can fairly be considered representative of the St. Louis legal market.

> To support its position with regard to St. Louis market rates, defendant filed a series of surveys of St. Louis, Missouri attorney billing rates published in Missouri Lawyers Weekly, in August 2017, September 2016, September 2015, June 2014, June 2013, August 2012, March 2011, March 2010, and March 2009.  See ECF No. 275-2.  See also ECF No. 283 (defendant's notice of filing supplemental authority).  The surveys include considerable detail relating to the methodology employed in compiling information, and analysis of the data collected.  For example, the most recent publication states:

> The hourly rates were gathered from applications for fees for work completed in 2016 and 2017 included in court filings.  This year's sampling included rates from 145 Missouri attorneys, 18 staff at Missouri firms and 172 out-of-state attorneys.  St. Louis had an average of $411 compared to $373 in Kansas City.  The gap was wider among partners, who average a rate of $504 in St.

Louis compared to $406 in Kansas City, than it was for associates with an average rate of $269 in St. Louis and $258 in Kansas City.

See id. at 2.  The survey's introduction continues, providing additional detail in a section titled "Methodology."  See id. at 4. The surveys also identify by name the numerous firms and individual attorneys when listing hourly rates charged.  See id.

Based on the eighty pages of survey data and analysis, and a review of relevant persuasive authority, defendant proposes the following as reasonable St. Louis market rates:

| Time Period | Attorney Name | Position | Reasonable Rate |
|---|---|---|---|
| 2009-2010 | Mark "Thor" Hearne | Partner | $375/hour |
| | Lindsay Brinton | Associate | $200/hour |
| | Meghan Largent | Associate | $200/hour |
| | Miscellaneous | Paralegal | $100/hour |
| 2011-2012 | Mark "Thor" Hearne | Partner | $390/hour |
| | Lindsay Brinton | Associate | $225/hour |
| | Meghan Largent | Associate | $225/hour |
| | Miscellaneous | Paralegal | $100/hour |
| 2013-2014 | Mark "Thor" Hearne | Partner | $401/hour |
| | Lindsay Brinton | Associate | $236/hour |
| | Meghan Largent | Associate | $236/hour |
| | Miscellaneous | Paralegal | $145/hour |
| 2015-2016 | Mark "Thor" Hearne | Partner | $426/hour |
| | Lindsay Brinton | Counsel | $423/hour |
| | Meghan Largent | Counsel | $423/hour |
| | Miscellaneous | Paralegal | $150/hour |

See ECF No. 251 at 39 (footnotes omitted).

The court finds defendant's proposed billing rates for the St. Louis market considerably more persuasive than the rates proposed by plaintiffs.  Not only are the rates supported by more substantial, transparent evidence, but defendant's proposed rates are more in line with the rates previously applied by this court in the rails-to-trails context.

18

See, e.g., Bratcher v. United States, 136 Fed. Cl. 786, 799-800 (Mar. 9, 2018) (adopting a partner rate of $475, a counsel rate of $375, and an associate rate of $275, a paralegal rate of $150, and collecting numerous cases in support).

That said, the court takes issue with defendant's proposed rates in one respect. While the court believes that the surveys underlying defendant's proposed rates are more reliable than the survey underlying plaintiffs' proposed rates, defendant offers no clear reason for assigning each attorney an hourly rate that is marginally lower than the average hourly rate in the corresponding survey years. For example, according to the Missouri Lawyers Weekly survey published in August 2017 (compiling information from the preceding twelve months), the average hourly compensation for a partner in St. Louis was $504, see ECF No. 275-2 at 7, and the survey published the previous year, in September 2016 (compiling information from work performed in 2015 and 2016), the average hourly compensation for a partner in St. Louis was $459, see id. at 18, but defendant proposes a rate of $426 for Mr. Hearne. It appears that defendant relies on some combination of persuasive authority from this court and from other jurisdictions in arriving at these figures, see ECF No. 251 at 39, but the evidence submitted in the present proceeding is a superior basis for the court's decision.

The court concludes that the average St. Louis hourly rates for attorneys, as presented in the Missouri Lawyers Weekly surveys, provide a reasonably reliable basis for establishing appropriate rates in this case. The court, therefore, must compare the market rates for Washington, D.C. proposed by plaintiffs and the market rates evidenced by the Missouri Lawyers Weekly surveys. In the billing statements filed with plaintiffs' opening brief, Mr. Hearne recorded an hourly rate of $826. See ECF No. 230 at 2 (listing a billing entry for 0.5 hours, for a total fee of $413). In the supplemental billing statements filed with plaintiffs' reply brief, Mr. Hearne recorded an hourly billing rate of $859. See ECF No. 262-1 at 6. The most recent hourly rate for average partner compensation, found in the August 2017 survey, is $504. See ECF No. 275-2 at 7. Mr. Hearne's hourly rate of $826 is a 64% increase of the average $504, while his hourly rate of $859 is more than a 70% increase of the average $504. In the court's view, either calculation represents a "very significant" difference in hourly rates. Avera 515 F.3d at 1349 (quoting Davis County, 169 F.3d at 758). As a result, the court hereby finds that St. Louis market rates should apply to plaintiffs' recovery in this case.[8]

[8]     After reviewing the parties' submissions on this issue, the court notes that defendant's Exhibit 1, ECF No. 248, does not consistently apply a proposed St. Louis rate for each individual recording billing entries. Despite the fact that defendant strenuously argues that St. Louis rates should apply to plaintiffs' attorneys in the text of its brief, see, e.g., ECF No. 251 at 37, the chart provided in the exhibit substitutes a proposed Laffey rate for ten attorneys, without adequate explanation. See, e.g., ECF No. 248 at 16

3.      Plaintiffs' Recovery Must Be Based on Historical Rates

The court also notes that the parties disagree as to whether attorney compensation should be awarded based on historical rates or current rates.  Plaintiffs argue that, despite the fact that this case has been on-going for nearly a decade, all work should be compensated on the basis of current billing rates.  See ECF No. 229-1 at 28-30.  Defendant argues that binding precedent requires the court to award fees based on historical rates.  See ECF No. 251 at 41-44.

In Biery v. United States, the Federal Circuit held that attorneys' fees awarded pursuant to the URA should be calculated based on historical rates because "under the no-interest rule, recovery of interest on an award of attorney fees is barred unless an award of interest is expressly and unambiguously authorized by statute."  818 F.3d 704, 714 (Fed. Cir. 2016) (citing Shaw v. Library of Congress, 478 U.S. 310, 322 (1986)).  Plaintiffs contend that this court should not adhere to this precedential opinion on the basis of two decisions issued by the Supreme Court of the United States, both of which pre-date the Federal Circuit's decision in Biery.  See ECF No. 229-1 at 28-30 (discussing Missouri v. Jenkins, 491 U.S. 274 (1989) and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010)).  Not only were these cases available to the Federal Circuit at the time it decided Biery, neither Jenkins nor Perdue involved the URA.

In their opening brief, plaintiffs stated their intention to take this issue to the Federal Circuit or the Supreme Court if this court failed to adopt their view that current rates should apply:

---

(assigning Ms. Albin-Riley and Mr. Makin Laffey rates rather than St. Louis rates).  The key provided at the beginning of the chart states that the "Proposed Reimbursement" column "[i]dentifies reimbursement owed Plaintiffs, applying St. Louis rates where applicable and Laffey rates where St. Louis rates are not applicable."  See id. at 2.  Defendant fails, however, to explain this hybrid approach to assigning the appropriate hourly rate, and it is contrary to the court's present understanding of when the Laffey matrix rates are relevant to a fee award.  See, e.g., Bratcher, 136 Fed. Cl. at 798 & n.11 (explaining that the Laffey matrix may be used in the event that Washington, D.C. rates are applied, but applying St. Louis rates in calculating fee award); see also ECF No. 229-1 (plaintiffs explaining that "the Laffey Matrix can be used to approximate [St. Louis] fees for the Washington, D.C. market"); ECF No. 251 (defendant noting that "[b]oth parties agree that, if D.C. rates apply, the Court should generally derive rates from the Laffey matrix").  As such, the court will disregard this calculation included in defendant's chart.

> We acknowledge this Court is bound by the Federal Circuit's decisions.  To
> the extent this Court reads Biery to preclude calculating the lodestar fee using
> current hourly rates, the Federal Circuit's holding is contrary to the Supreme
> Court's holdings.  Should this Court adopt this view, we preserve this issue
> for review by the Federal Circuit en banc or by the Supreme Court.

ECF No. 229-1 at 29 n.36.  This court is, indeed, bound by the rulings of the Federal
Circuit, but welcomes any clarity or further development in the law that may be provided
by subsequent appeals filed by plaintiffs.

For the foregoing reasons, the court concludes that the attorney billing rates shall
be calculated based on the average hourly rates as reflected in the Missouri Lawyers
Weekly surveys, and shall be awarded historically.  The court recognizes that the
categories of "partner" and "associate" used in the surveys do not account for "counsel,"
the designation used by plaintiffs' firm that is apparently a middle ground between the
associate and partner designations.  The court also lacks the information to assign
appropriate designations to all relevant professionals for the years at issue, and notes that
the billing records include professionals not included in defendant's chart of timekeepers.
Therefore, the court directs the parties to **CONFER** and **FILE** a **joint proposal** setting
forth, by year, the hourly rates for each timekeeper included on the billing statements,
which incorporates the average hourly rates for partners and associates reflected in the
Missouri Lawyers Weekly surveys, and which reflects an agreed upon hourly rate for
individuals serving in counsel positions.

C.      Costs

Plaintiffs seek to recover $14,362 in litigation costs.  See ECF No. 262 at 8.
Based on the descriptions of these costs provided by plaintiffs, they cover expenses for
matters such as court filings and transcripts, postage and delivery services, photocopy
services, telephone calls, electronic research, case-related travel expenses, and expert
fees.  See ECF No. 230 at 66-68; ECF No. 262-1 at 9.  Defendant does not contest
plaintiffs' requested litigation costs.  In the court's view, plaintiffs have demonstrated
both that the costs were actually incurred, as required by the URA, and that $14,362 is a
reasonable sum to have spent on the costs included on plaintiffs' ledger throughout the
course of nine years of litigation.  As such, the court hereby awards plaintiffs' costs in the
amount of $14,362.

IV.     Conclusion

For the foregoing reasons, plaintiffs' motion for attorneys' fees and costs, ECF
No. 229, is hereby **GRANTED, in part**, and **DENIED, in part** as follows:

(A)     As to the number of compensable hours:

   (1)     Plaintiffs' fee request shall be reduced based on the level of success divided into four procedural categories, as follows:

      (a)     First litigation period, from April 2009 to March 2010, the court hereby **reduces** by **thirty percent** the number of hours billed for each timekeeper during this period;

      (b)     Second litigation period, from March 2010 to September 2011, the court hereby **reduces** by **fifty percent** the number of hours billed for each timekeeper during this period;

      (c)     Third litigation period, from September 2011 to August 2013, the court hereby imposes **no reduction** to plaintiffs' fees request for this time period;

      (d)     Fourth litigation period, from September 2013 to present, the court hereby imposes **no reduction** to plaintiffs' fees request for this time period.

   (2)     Plaintiffs' fee request also shall be reduced based on non-compensable categories of work, as follows:

      (a)     The court hereby **reduces** plaintiffs' fee request for reimbursement of time spent soliciting clients, as identified by defendant, with the **exception of fifteen hours** billed for **Mark F. (Thor) Hearne, II**.

      (b)     The court hereby **reduces** plaintiffs' fee request for reimbursement of administrative or secretarial hours, as identified by defendant, with the **exception of two hours** billed for **David Yearwood**, and **3.2 hours** billed for **Alexandrea Barney**.

      (c)     The records supporting plaintiffs' fee request include a number of vague time entries, and as such, the court hereby **reduces** the hours billed for **Joseph Cavinato**, prior to

November 2011, by **ten percent**; and **reduces** the hours billed for **Debra Albin-Riley** by **twenty-five percent**.

    (d)    The court hereby **reduces** plaintiffs' fee request due to excessive work related to their attorneys' fees petition, and only the following hours shall be permitted:  **125 total hours**, divided as follows—**twenty-five hours** of paralegal time, **sixty hours** of associate time, and **forty hours** of partner time.

    (3)    The court notes that plaintiffs submitted additional billing records attached to their reply brief, ECF No. 262, to which defendant did not have an opportunity to specifically respond.  The parties are instructed to cooperate to ensure that the conclusions expressed in this opinion are appropriately applied thereto.

(B)    As to the relevant community:

All hours shall be compensated at historical St. Louis market rates, appropriate to the level of experience for each timekeeper, as established by the yearly <u>Missouri Lawyer Weekly</u> surveys submitted by defendant for partner, associate, and paralegal rates, and at an agreed-upon, appropriately commensurate rate for attorneys designated as "counsel."

(C)    As to litigation costs:

Plaintiffs' request for litigation costs, in the amount of $14,362, is **GRANTED**, as reasonable and compensable.

The parties are instructed to **CONFER** and **FILE** a **joint proposal** for the award of fees and costs based on the guidance and legal conclusions contained in this opinion, on or before **August 24, 2018**.  The proposal shall:  (1) demonstrate compliance with the various reductions that the court has directed the parties to make to plaintiffs' fee petition; (2) state the rates, by year, applied for each timekeeper; and (3) state the total number of hours billed for each timekeeper.[9]

Plaintiffs' supplemental brief was erroneously filed as a supplemental motion, ECF No. 278.  The clerk's office is directed to **TERMINATE** this motion and edit the

---

[9]    Filing the joint proposal as directed by this court does not waive any right plaintiffs may have to pursue a revision of these fees on appeal.

docket entry, ECF No. 278, to properly reflect that this filing is plaintiffs' supplemental brief, not a motion.

In addition, on or before **August 3, 2018**, the parties shall **CONFER** and **FILE** a **joint proposed redacted version** of this opinion, with any protectable information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge